Tatiahanah Marie MILLER, a minor, by her guardian ad litem, Dennis E. Robertson, Plaintiff-Appellant,

v.

MAUSTON SCHOOL DISTRICT, CESA-V, and Employers Mutual Casualty Company, Defendants-Respondents.

Marilyn JACKSON, individually, and as special administrator for the Estate of Roger Cruea, and Earl Jackson, Plaintiffs-Appellants,

v.

MAUSTON SCHOOL DISTRICT, CESA-V, and Employers Mutual Casualty Company, Defendants-Respondents.

Court of Appeals

*No. 97–1874. Submitted on briefs August 26, 1998.—Decided October 22, 1998.*

(Also reported in 588 N.W.2d 305.)

On behalf of the plaintiff-appellant, Tatiahanah Marie Miller, the cause was submitted on the briefs of *Dennis E. Robertson* and *Margery Mebane Tibbetts* of

*Brennan, Steil, Basting & MacDougall, S.C.*, of Janesville.

On behalf of the plaintiff-appellant, Marilyn Jackson, individually and as special administrator for the Estate of Roger Cruea, and Earl Jackson, the cause was submitted on the briefs of *Eric P. Molberg* of *Chiquoine & Krueger, S.C.* of Reedsburg.

On behalf of the defendants-respondents, CESA-V and Employers Mutual Casualty Insurance Company, the cause was submitted on the briefs of *Mark J. Mingo* of *Mingo & Yankala, S.C.*, of Milwaukee.

Before Vergeront, Roggensack, and Nichol,[1] JJ.

VERGERONT, J. This is a wrongful death action arising from the drowning death of Roger Cruea, a student in the Mauston Public School District enrolled in a special education program run in part by the Cooperative Education Service Agency No. V (CESA-V). The consolidated actions of Tatiahanah Miller, Cruea's alleged child, by her guardian ad litem, and of Cruea's parents, Marilyn[2] and Earl Jackson, claimed negligence on the part of CESA-V.[3] The trial court granted summary judgment in favor of CESA-V on the ground that it was a state agency and therefore Miller and the Jacksons were required to file a notice of claim with the attorney general under § 893.82(3), STATS., which they had not done. On appeal, Miller and the Jacksons contend the trial court erred because CESA-V is not a state

---

[1] Circuit Judge Gerald Nichol is sitting by special assignment pursuant to the Judicial Exchange Program.

[2] Marilyn Jackson brought suit individually and as special administrator for the estate of Roger Cruea.

[3] The plaintiffs settled their claims with the Mauston School District and stipulated to its dismissal.

agency and the notice of claim requirement in § 893.82(3) does not apply.

We conclude that § 893.82(3), STATS., does not apply to a suit against CESA-V because it is not a state officer, employee or agent within the meaning of that statute. We also conclude that even if the complaints were amended to name an officer, employee or agent of CESA-V as a defendant, § 893.82(3) would still be inapplicable because CESA-V is not a state agency but is rather a "governmental subdivision or agency thereof" within the meaning of § 893.80(1), STATS. We therefore reverse and remand.

## BACKGROUND

CESAs are organized under Chapter 116, STATS. Their purpose is described in § 116.01, STATS.:

> **Purpose.** The organization of school districts in Wisconsin is such that the legislature recognizes the need for a service unit between the school district and the state superintendent.[4] The cooperative educational service agencies are designed to serve educational needs in all areas of Wisconsin by serving as a link both between school districts and between school districts and the state. Cooperative educational service agencies may pro-

[4] Effective January 1, 1996, the reference to the "state superintendent" (the state superintendent of public instruction) in ch. 116, STATS., was changed to the "department" (the Department of Education). 1995 Wis. Act 27, § 9145(1)(b). However, the education provisions of Wis. Act 27 were held unconstitutional and declared void in *Thompson v. Craney*, 199 Wis. 2d 674, 698–700, 546 N.W.2d 123, 134–35 (1996), and the legislature subsequently changed the reference to the "department" back to the "state superintendent." *See* 1997 Wis. Act 237, § 361tg.

vide leadership, coordination and education services to school districts, University of Wisconsin System institutions and centers and technical colleges. Cooperative educational service agencies may facilitate communication and cooperation among all public and private schools, agencies and organizations that provide services to pupils.

*Id.* (footnote added).

Each CESA is governed by a board of control composed of school board members from school districts within the agency's area, appointed by the school boards. *See* § 116.02(1), STATS. Among the duties of the board of control are "[d]etermin[ing] each participating local unit's prorated share of the cost of cooperative programs and assess[ing] the cost of each program against each unit participating in the program including, without limitation because of enumeration, unemployment compensation, litigation expense, collective bargaining and monetary awards by courts and agencies. . . ." Section 116.03(4), STATS. The board is also to authorize the expenditure of money for the purposes set forth in the chapter; establish the salaries of the agency administrator and other professional and nonprofessional employees, with state reimbursement for the salary of the agency administrator; and every third year, as scheduled by the state superintendent, submit to the state superintendent for approval an evaluation of agency programs and services. Section 116.03(10), (11) and (13).

For the purpose of providing services to pupils, CESAs are authorized to contract with school districts, University of Wisconsin institutions, and certain other institutions and organizations that provide services to pupils. *See* § 116.032, STATS. A CESA "may in its name enter into contracts authorized by [Chapter 116] and

545

may sue and be sued." Section 116.015, STATS. The board of control of a CESA may purchase, hold, encumber and dispose of real property in the name of the agency for use as its office or for any educational service it provides, if the resolution is adopted in the manner prescribed in the statute. *See* § 116.055, STATS. CESAs may incur loans up to certain amounts. *See* § 116.08(2), STATS.

The school boards in each CESA annually pay the CESA's board of control an amount determined by a statutory formula. *See* § 116.08(5)(b), STATS. Each CESA also receives from the State an amount not to exceed $25,000 annually for the maintenance and operation of the office of the board of control and agency administrator, and to match any federal funds received by the agency. *See* § 116.08(1). CESAs may claim and receive state aid for performing a service or function under contract with a county board or agency, school board or county handicap children's agency board. *See* § 116.08(4).

The trial court determined that CESA-V is a state agency and therefore § 893.82(3), STATS., applied to the claim against it. That section provides:

> (3) Except as provided in sub. (5m), no civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employe's or agent's duties, . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including

the name of the state officer, employe or agent involved. . . .

The trial court based its decision on the fact that CESAs were created by the legislature and receive funding from the state and from school boards. The court also was persuaded by *Rawhouser v. CESA No. 4*, 75 Wis. 2d 52, 53, 248 N.W.2d 442, 443 (1977), in which the court described CESA as a "state agency," although the trial court acknowledged this statement might be dictum.

## DISCUSSION

We review a trial court's grant of summary judgment de novo, applying the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment is appropriate if there are no genuine issues of disputed fact and a party is entitled to judgment as a matter of law. *Germanotta v. Nat'l Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). It is undisputed that Miller and the Jacksons did not file a notice of claim with the attorney general. The question therefore is whether § 893.82(3), STATS., requires that they do so regarding their claims against CESA-V. This is a question of law, which we review de novo. *See Ball v. Dist. No. 4, Area Bd. of Vocational, Technical and Adult Educ.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The purpose of statutory interpretation is to discern the legislative intent. *Lincoln Sav. Bank, S.A. v. DOR*, 215 Wis. 2d 430, 441, 573 N.W.2d 522, 527 (1998). We first consider the language of the statute. *Id.* If that language clearly and unambiguously sets

forth the legislative intent, we will not look outside the statutory language to ascertain the intent. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *State v. Sample*, 215 Wis. 2d 486, 494, 573 N.W.2d 187, 191 (1998). If a statute is ambiguous, we look to the scope, history, context, subject matter and object of the statute in order to ascertain legislative intent. *Id.*[5]

On appeal both parties frame the issue as whether CESA-V is a state agency, without focusing on the language of § 893.82(3), STATS. However, we think that statutory language is the proper starting point. We conclude that § 893.82(3) does not apply to CESA-V because it is neither a "state officer, employe or agent."

Section 893.82(3), STATS., is directed to suits against "any state officer, employe or agent" and that phrase is used consistently throughout § 893.82, which is titled "Claims against state employes; notice of

---

[5] Miller and the Jacksons presented to the trial court an affidavit of Assistant Attorney General Steven Tinker who opined that a CESA is not a state agency and averred that he found no record, going back to the mid–1970s, of the involvement of the Department of Justice in CESA litigation. Jean Gilding, of the State of Wisconsin Department of Employe Trust Funds, averred that department does not treat CESA employees as employees of a state agency. Don Stevens, administrator of CESA-V, testified at his deposition that he did not consider CESA-V to be "part of the State" and it also was not a local school district; he did not report to the superintendent of public instruction or to the Governor. Miller and the Jacksons point out that this testimony is uncontroverted, but they also concede it is not dispositive, and CESA-V argues that it is not relevant at all. We agree with CESA-V that these submissions do not bear on the resolution of the legal issue before us—whether the legislature intended a CESA to be a state agency.

claim; and limitation of damages." The term "state agency" is not mentioned in § 893.82(3) or any other subsection of § 893.82. "State officer, employe or agent" is not defined, except insofar as § 893.82(2)(d) provides:

> (d) "State officer, employe or agent" includes any of the following persons:
> 1. An officer, employe or agent of any non-profit corporation operating a museum under a lease agreement with the state historical society.
> 1m. A volunteer health care provider who provides services under s. 146.89, for the provision of those services.
> 1r. A physician under s. 252.04(9)(b).
> 2. A member of a local emergency planning committee appointed by a county board under s. 59.54(8)(a).
> 3. A member of the board of governors created under s. 619.04(3), a member of a committee or subcommittee of that board of governors, a member of the patients compensation fund peer review council created under s. 655.275(2) and a person consulting with that council under s. 655.275(5)(b).

Applying the common meaning of "officer" and "employe," it is evident that both refer to individuals, and CESA-V is neither. If a suit against CESA-V is governed by § 893.82(3), STATS., it must be because "agent" could refer to an entity other than an individual. We will assume for purposes of argument that this is a reasonable interpretation of "agent." We then consider the purpose and context of § 893.82(3) and related statutes. Based on these, we conclude that a state "agent" in § 893.82(3) means an individual and does not mean a state "agency."

The legislature has set forth the purposes of § 893.82, STATS., in § 893.82(1). They are to:

549

 (a) Provide the attorney general with adequate time to investigate claims which might result in judgments to be paid by the state.

 (b) Provide the attorney general with an opportunity to effect a compromise without a civil action or civil proceeding.

 (c) Place a limit on the amounts recoverable in civil actions or civil proceedings against any state officer, employe or agent.

Section 893.82(1).

■

Section 893.82, STATS., is directed to those actions that might result in liability to the state. A state agency is considered an arm of the state and is protected by sovereign immunity from liability for damages just as the state is, unless the legislature has given it such independent proprietary powers as to make it an "independent going concern." *Walker v. Univ. of Wis. Hosp.*, 198 Wis. 2d 237, 242–43, 542 N.W.2d 207, 209–10 (Ct. App. 1995). This suggests that § 893.82 is concerned with suits against individuals for which the state may be liable, not with suits against state agencies, which have sovereign immunity. An examination of two related statutes, § 165.25, STATS., which governs the duties of the department of justice to provide representation, and § 895.46, STATS., which addresses when the state pays for judgments against an "officer, employe, or agent of the state" also suggest that "agent" in § 893.82(3) is an individual.

Section 165.25(1), STATS., provides that, under certain circumstances, the department of justice shall "appear for and represent the state, any state department, agency, official, employe or agent . . . in any civil or criminal matter." This distinguishes between a state agency and an agent, using essentially the same

terms—"state . . . official, employe or agent"—as § 893.82(3), STATS. Section 895.46(1)(a), STATS.,[6] also makes this distinction, referring to the "employing state agency" and the "state officer, employe or agent" in the same sentence, and explaining when judgments entered against the "officer or employee" or "[a]gents of any department of the state," in excess of any insurance applicable, are paid for by the state.

We conclude that, even if CESA-V is a state agency, it is not a "state officer, employe or agent" within the meaning of § 893.82(3), STATS. However, we recognize that does not resolve the real dispute between the parties, because, if an amendment to the

---

[6] Section 895.46(1)(a), STATS., provides in part:

**State and political subdivisions thereof to pay judgments taken against officers.** (1) (a) If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe. Agents of any department of the state shall be covered by this section while acting within the scope of their agency. Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment. The duty of a governmental unit to provide or pay for the provision of legal representation does not apply to the extent that applicable insurance provides that representation. If the employing state agency or the attorney general denies that the state officer, employe or agent was doing any act growing out of or committed in the course of the discharge of his or her duties, the attorney general may appear on behalf of the state to contest that issue without waiving the state's sovereign immunity to suit. . . .

551

complaint named an officer, employe or agent of CESA-V and alleged negligence by that person, the question would persist: is CESA-V a state agency, such that suit against its officer, employe or agent requires notice under § 893.82(3)? We therefore address this issue now, and conclude that CESA-V is not a state agency.

CESA-V argues that the trial court correctly relied on *Rawhouser v. CESA No. 4*, 75 Wis. 2d 52, 248 N.W.2d 442 (1977), because the supreme court there decided that CESAs are state agencies. We do not agree that *Rawhouser* decided the issue before us.

Rawhouser was a social worker employed by CESA No. 4. He claimed that CESA No. 4 did not comply with § 118.22, STATS., before it decided not to renew his contract for the next year. Section 118.22 governs the renewal of teacher contracts and applies to "boards," which are defined to include a board of control of a CESA, as well as school boards and technical college district boards. Section 118.22(1)(a). The supreme court concluded that § 118.22 did govern CESA No. 4 in the non-renewal of teachers it employed, including Rawhouser. However, the court affirmed the trial court's denial of a writ of mandamus on the ground that although the notice procedure in § 118.22(3) was not followed for Rawhouser, in the particular circumstances of his case that failure did not require the issuance of a discretionary writ of mandamus. *Rawhouser*, 75 Wis. 2d at 61, 248 N.W.2d at 446–47.

The court in *Rawhouser* began its discussion by describing the purpose and functions of CESA No. 4 in this way:

> *CESA No. 4 is a state agency organized and operating under the provisions of ch. 116, Wisconsin statutes.* CESA No. 4 is one of 19 such agencies

statewide, created under subchapter 11 of ch. 39, Stats., 1963, and designed to serve the special educational needs of school districts in Wisconsin by cooperatively providing teachers, students, school boards, administrators and others, special education services, including such programs as research, special student classes, data collection, processing and dissemination, in-service programs and liaison between the state and local school districts. Sec. 116.01, Stats. . . .

Procedurally, the various CESA's [sic] make available special educational services and personnel to member school districts on a demand basis. If a school district requests a given service, within the context of the CESA's providing authority, the district will contract with the CESA for that service; the CESA will hire the appropriate personnel; and the district will be charged a proportionate share of the cost, prorated among all of the districts which utilize that particular service.

*Rawhouser*, 75 Wis. 2d at 53–54, 248 N.W.2d at 443 (emphasis added).

CESA-V points to the statement that "CESA No. 4 is a state agency" as controlling the outcome of this appeal. However, apart from that single sentence, there is no discussion of whether CESA No. 4 is a state agency. That was not relevant to a resolution of the issues before the court. The question concerning CESA No. 4's status was whether it was included within the definition of "board" in § 118.22(1)(a), STATS.; the simple answer, based on the statutory language, was "yes." Inclusion under § 118.22(1)(a) has nothing to do with being a state agency: school boards, for example, are also included. The single sentence referring to CESA No. 4 as "a state agency" is part of a summary of

background information not disputed by the parties, rather than a decision by the court.

Although we are bound by supreme court decisions, that court has made clear it is does not "consider it inappropriate for the court of appeals or a circuit court to evaluate statements in [its] opinions on the basis of whether they constitute dictum." *State v. Koput*, 142 Wis. 2d 370, 387 n.12, 418 N.W.2d 804, 811 (1988). If a statement is obiter dictum—that is, irrelevant to the rationale of the decision—it is not binding unless the statement is an administrative or supervisory direction, which we are bound to follow. *Id.* We conclude the supreme court's statement in *Rawhouser* that CESA No. 4 is a state agency is irrelevant to the rationale of its decision and not the type of obiter dictum (administrative or supervisory directions) we must follow.

The trial court relied on CESAs being established by the state legislature and receiving state funds in holding that CESA-V is a state agency. CESA-V's brief points, in addition, to the required reporting to the state superintendent every three years, § 116.03(13), STATS., and the fact that CESAs carry out the important public purpose of education. However, these characteristics do not distinguish a CESA from other entities that are clearly not state agencies. For example, school districts receive state funds, *see, e.g.,* §§ 121.01 and 121.07–15, STATS.; are established and regulated by the legislature, *see* chs. 117, 118, 119 and 120, STATS.; are supervised in certain ways by the state superintendent, *see* § 115.28(1) and (3), STATS.; and carry out the important state function of education. Yet school districts are not state agencies. They are subject to suit under § 893.80, STATS., the local government

counterpart to § 893.82, STATS.[7] *See Fritsch v. St. Croix Cent. Sch. Dist.*, 183 Wis. 2d 336, 343, 515 N.W.2d 328, 331 (Ct. App. 1994).

In the search for an appropriate definition of "state agency," we turn to the statutes governing the structure and appropriations for state government. There are, as Miller and the Jacksons observe, a number of different definitions of state agencies throughout the statutes.[8] Perhaps the broadest one is the definition in Chapter 20, STATS., "Appropriations and Budget Management," which is also used in other chapters.[9] Section 20.001(1), STATS., provides: " 'State agency' means any office, department or independent agency in the executive branch of Wisconsin state government, the legislature and the courts." CESAs are not part of the legislature or the courts, and they are not listed among the offices, departments and independent agencies in Chapter 15, STATS., "Structure of the Executive Branch." The annual appropriation to each CESA is contained in the appropriation for the Department of Education, in the subsection "Aids for local programming," *see* § 20.255(2)(fg). STATS., which also includes aids to schools, head start programs, and youth centers. *See* § 20.255(2).

---

[7] Section 893.80(1), STATS., provides:

[N]o action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless. . . .

[8] *See, e.g.,* §§ 16.375(1), 100.45(1)(dm), 101.177(1)(d), 103.49(1)(f), 106.21(1)(h) and 285.59(1)(b), STATS.

[9] *See, e.g.,* §§ 7.33(1)(c), 69.30(1)(c), 71.105 and 106.16(1)(b), STATS.

We conclude that CESA does not come within the definition of "state agency" and is not treated as a state agency under Chapter 20, STATS. On the other hand, CESAs are specifically included within the definition of "local government unit" for purposes of the local government property insurance fund, *see* § 605.01(1), STATS.; they are treated as local governmental units rather than part of state government with respect to public deposits, *see* § 34.01(1) and (4), STATS.; and they are considered distinct from state agencies for purposes of contracts with the educational communications board. *See* § 39.115(3), STATS. They are also specifically included, along with other local facilities and entities, as municipal public works projects for purposes relating to municipal revenue bonds. *See* § 66.067, STATS.

In addition CESAs are frequently grouped with school districts in spelling out their duties and functions. *See* § 118.22(1), STATS. (teacher contracts); § 121.76(1)(a), STATS. (tuition payments); § 118.12(1), STATS. (promotion and sale of goods and services); and § 115.31(1)(b), STATS. (revocation of teacher licenses). *See also* § 115.28(3) and (3m), STATS. (role of the state superintendent of public instruction with respect to schools and CESAs). And, as the court in *Rawhouser* recognized, CESAs were created to aid school districts in providing services they were not able to or did not desire to provide. *See Rawhouser*, 75 Wis. 2d at 53–54, 248 N.W.2d at 443.

██

Based on Chapter 116, STATS., which describes the organization and functions of CESAs and their treatment in other statutes, we conclude that a CESA is not a state agency and claims against its officers, employees or agents are not governed by § 893.82, STATS.

Rather, a CESA is a governmental subdivision or agency thereof within the meaning of § 893.80(1), STATS. Therefore the trial court erred in dismissing the claims of Miller and the Jacksons for failure to comply with § 893.82(3).

CESA-V did move for summary judgment based on failure to comply with § 893.80(1), STATS., asserting that Miller filed a notice of claim with CESA-V 1090 days after Cruea's death and the Jacksons never filed a notice of claim with CESA-V. Miller and the Jacksons responded that CESA-V had actual notice of the claim. Under § 893.80(1)(a), unlike under § 893.82(3), STATS., a failure to file a notice of claim within the prescribed time limit does not bar an action if the defendant had actual notice and the claimant shows no prejudice to the defendant. Section 893.80(1)(a). Because the trial court dismissed both claims due to noncompliance with § 893.82, it did not decide whether § 893.80 required dismissal, and the parties have not briefed that issue on appeal. On remand, the trial court may consider this and any other grounds for summary judgment in CESA-V's motion that have not been resolved by this decision.[10]

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[10] It appears that CESA-V also moved for summary judgment on the grounds that the Jacksons' claim was barred by the terms of their release of the school district, and that CESA-V is immune from suit under the doctrine of sovereign immunity. Our decision that CESA-V is not a state agency resolves the sovereign immunity issue against CESA-V.