Danny R. PETERSON, Plaintiff-Appellant-Petitioner,

STATE of WISCONSIN DEPARTMENT OF HEALTH AND FAMILY SERVICES, and Community Living Alliance, Plaintiffs,

v.

MIDWEST SECURITY INSURANCE COMPANY, Defendant-Respondent,

WISCONSIN CARPENTERS' HEALTH FUND, and American Family Mutual Insurance Company, Defendants.

Supreme Court

*No. 99–2987. Oral argument September 17, 2001.—Decided December 7, 2001.*

2001 WI 131

(Also reported in 636 N.W.2d 727.)

568

For the plaintiff-appellant-petitioner there were briefs by *Daniel A. Rottier, Virginia M. Antoine* and *Habush, Habush, Davis & Rottier, S.C.*, Madison, and oral argument by *Daniel A. Rottier*.

For the defendant-respondent there was a brief by *James W. Mohr, Jr.,* and *Mohr & Anderson, S.C.*, Hartford, and oral argument by *James W. Mohr, Jr.*

¶ 1.   DIANE S. SYKES, J. This case requires us to determine who qualifies as an "owner" of "property" for purposes of the recreational immunity statute, Wis. Stat. § 895.52 (1997–98), which immunizes property owners against liability for injuries to persons engaged in recreational activity on their property. More specifically, the issue is whether the owner of a tree stand used for deer hunting is entitled to recreational immunity when he does not also own the real property upon which the tree stand is situated.

¶ 2. The plaintiff, Danny Peterson, was injured when the tree stand from which he was bow hunting gave way and he fell to the ground. At the time of his injury, Peterson was hunting with permission on land owned by Vernon and Culleen Peterson.[1] The tree stand, however, had been built and was owned by the Petersons' nephew, Harold Shaw.[2]

¶ 3. Peterson sued Shaw's insurer. The circuit court dismissed the case, concluding that the recreational immunity statute applied because 1) Peterson was engaged in recreational activity when he was injured; 2) the tree stand from which he fell was "property" under the statute; and 3) Shaw was the owner of the tree stand. The court of appeals affirmed.

¶ 4. The recreational immunity statute confers immunity on any person who "owns, leases or occupies property" for injuries to those engaged in recreational activity on the property. Wis. Stat. § 895.52(1)(d)1 (1997–98). "Property" is defined in the statute as "real property and buildings, structures and improvements thereon, and the waters of the state." Wis. Stat. § 895.52(1)(f) (1997–98). A tree stand is a "structure" as that term is commonly and ordinarily understood. The statute does not require that the owners of "buildings, structures and improvements" also own the underlying real property in order to qualify for immunity. Accordingly, as the owner of the tree stand, Shaw is entitled to immunity under the statute, even though he did not also own the real property on which the tree stand was built. We therefore affirm.

---

[1] Vernon and Culleen Peterson are not related to the plaintiff in this action.

[2] Harold Shaw was not named as a defendant. He died in 1998.

## I

¶ 5.  Vernon and Culleen Peterson own 121 acres of wooded land in Dane County. They permitted their nephew, Harold Shaw, to hunt deer on their property, and also allowed him to build two deer stands in the woods. Each stand was basically a small wooden platform "cinched in against the tree with a chain" about 20 feet off the ground, accessible by way of a metal ladder.

¶ 6.  In the fall of 1996, the plaintiff, Danny Peterson, accompanied Shaw to the Petersons' property. The Petersons gave Danny Peterson permission to hunt on their property. Shaw gave Peterson permission to use the tree stands. Peterson hunted on the property two or three times that year.

¶ 7.  In October 1997, Peterson returned to the property to bow hunt for deer. Peterson decided to use one of Shaw's tree stands. He climbed up the ladder and through the branches until he was level with the tree stand's platform. After testing the tree stand's ability to hold his weight, Peterson stepped out onto the platform. He spotted a deer less than five minutes later. Standing up on the tree stand to get a shot at the deer, Peterson turned his ankle "just a little bit." The tree stand collapsed "like a trapdoor." Peterson fell to the ground and was seriously injured.

¶ 8.  Peterson sued Shaw's liability insurer, Midwest Security Insurance Company, alleging that the tree stand had been negligently built and maintained, and that Shaw had negligently represented that the tree stand was "in good condition" and "safe to use." Midwest Security moved for summary judgment, as-

serting, among other things,[3] that Shaw was immune under Wis. Stat. § 895.52 (1997–98), the recreational immunity statute.[4]

¶ 9. The Dane County Circuit Court, the Honorable Patrick J. Fiedler, granted the motion, noting that hunting was specifically enumerated as a "recreational activity" in the statute, and concluding that the tree stand constituted a "structure" or "improvement" and therefore fell within the statute's definition of "property." Because Shaw was the owner of the tree stand, the circuit court held that he was entitled to immunity. The court of appeals affirmed, and we granted review.

## II

¶ 10. We review the circuit court's grant of summary judgment de novo, using the same methodology as the circuit court. *Waters v. Pertzborn,* 2001 WI 62, ¶ 37, 243 Wis. 2d 703, 627 N.W.2d 497. A court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

---

[3] In addition to asserting recreational immunity, Midwest Security also argued that Shaw was not negligent, that Peterson's claim relied upon evidence inadmissible under the Dead Man's Statute, and that the claim was barred by laches. Because we, like the court of appeals, resolve this case under the recreational immunity statute, we do not address the alternative arguments.

[4] All statutory references are to the 1997–98 version of the Wisconsin Statutes unless otherwise indicated.

¶ 11. The parties agree that as to the applicability of the recreational immunity statute, there are no material factual disputes. The case turns on the interpretation and application of a statute, which is a question of law that we review de novo. *Shannon v. Shannon*, 150 Wis. 2d 434, 447, 442 N.W.2d 25, 31 (1989).

¶ 12. The recreational immunity statute immunizes property owners against liability "for any injury to a person engaged in a recreational activity on the owner's property." *Crowbridge v. Village of Egg Harbor*, 179 Wis. 2d 565, 569, 508 N.W.2d 15, 17 (Ct. App. 1993). If the statute applies, a property owner owes no duty of inspection, warning or safety to "any person who enters the owner's property to engage in a recreational activity," and is otherwise immune from liability for injuries to any person engaged in recreational activity on the owner's property. Wis. Stat. § 895.52(2)(a) and (b).[5]

¶ 13. While the inquiry in many recreational immunity cases focuses on whether the injured plaintiff's "activity" was "recreational" within the meaning of the statute, no one here disputes that Peterson was engaged in a "recreational activity" as that term is defined in Wis. Stat. § 895.52(1)(g). Hunting is specifically listed as a "recreational activity" in the statutory definition. Wis. Stat. § 895.52(1)(g).

¶ 14. Whether Shaw is entitled to immunity depends upon whether he qualifies as a property owner under the statute. "Owner" and "property" are defined terms. An "owner" is "a person . . . that owns, leases or

---

[5] The statute contains several exceptions not at issue here. *See* Wis. Stat. § 895.52(3)-(6).

occupies property." Wis. Stat. § 895.52(1)(d)1. "Property" is "real property and buildings, structures and improvements thereon, and the waters of the state." Wis. Stat. § 895.52(1)(f).

¶ 15. The parties agree that Shaw owned the tree stand from which Peterson fell. Their dispute centers on whether the tree stand by itself is "property" under the statute. The circuit court and the court of appeals concluded that the tree stand was a "structure" and therefore "property" within the meaning of Wis. Stat. § 895.52(1)(f). We agree.

¶ 16. The term "structure" is not defined in Wis. Stat. § 895.52, and is therefore given its common and ordinary meaning. *See Ervin v. City of Kenosha,* 159 Wis. 2d 464, 483–84, 464 N.W.2d 654, 662 (1991). A "structure" is "something constructed," or "something made up of a number of parts that are held or put together in a particular way." *American Heritage Dictionary of the English Language,* 1782 (3d ed. 1992). "Structure" is also defined as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner." *Black's Law Dictionary,* 1424 (6th ed. 1991).

¶ 17. Shaw's tree stand was made of wood and "cinched in against the tree with a chain," and had a metal ladder. In other words, it was constructed, built, or put together in a particular way, and was made up of parts joined together. The tree stand was therefore a "structure" as that term is commonly and ordinarily understood. Shaw was therefore an owner of "property" within the meaning of the recreational immunity statute.

574

¶ 18.   Peterson reads the definition of "property" differently. He argues that the phrase "buildings, structures and improvements" merely modifies "real property," so that a person who owns a building, structure or improvement but does not also own the underlying real property does not own "property" within the meaning of the statute. He interprets the statute to create two categories of "property": 1) real property, *along with* any buildings, structures, or improvements thereon; and 2) the waters of the state. He bases this interpretation on the lack of punctuation between the phrases "real property" and "buildings, structures and improvements" in the definition.

¶ 19.   We decline to give the absence of a comma such interpretive significance. Peterson's punctuation-based interpretation operates to impose a requirement that does not appear on the face of the statute: that the owner of a building, structure or improvement implicated in a recreational injury must also own the underlying real property in order to own "property" as that term is defined in the statute. But the statute does not say " '[p]roperty' means real property and buildings, structures and improvements thereon *that are owned by the real property owner*," and we cannot rewrite it in the exercise of interpreting it. *See State v. Martin,* 162 Wis. 2d 883, 907, 470 N.W.2d 900, 910 (1991)("Our task is to construe the statute, not to rewrite it by judicial fiat.").[6] According to the unambiguous language of the statute, a person who owns a "building, structure or

---

[6] *See also* Ruggero J. Aldisert, *The Judicial Process* § 4 at 175 (American Casebook Series 1976)(quoting Lord Blackburn in *River Wear Comm'rs v. Adamson,* 2 App. Cas. 742, 746 (H.L. 1877)) (" 'But it is to be borne in mind that the office of the judges is not to legislate, but to declare the expressed intention

improvement" on real property owns "property" under the statute, regardless of whether he also owns the underlying real estate. Where the language of a statute is clear and unambiguous, we do not look beyond it to ascertain its meaning. *Dieter v. Chrysler Corp.*, 2000 WI 45, ¶ 21, 234 Wis. 2d 670, 610 N.W.2d 832.

¶ 20. This interpretation is consistent with *Doane v. Helenville Mutual Insurance Co.*, 216 Wis. 2d 345, 352, 575 N.W.2d 734, 737 (Ct. App. 1998), in which the court of appeals concluded that the definition of "property" in Wis. Stat. § 895.52(1)(f) basically "delineates three categories of property whose owners may qualify for immunity: (1) real property; (2) buildings, structures and improvements thereon; and (3) waters of the state."

¶ 21. This interpretation is also consistent with the expression of legislative purpose that accompanied the repeal of the old recreational immunity statute, Wis. Stat. § 29.68, and its replacement by Wis. Stat. § 895.52:

> **Legislative intent**. The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more

---

of the Legislature, even if that intention appears to the court injudicious; and I believe that it is not disputed that what Lord Wensleydale used to say is right, namely that we are to take the whole statute together, and construe it all together, giving the words their ordinary signification, unless when so applied they produce an inconsistency, or an absurdity or inconvenience so great as to convince the court that the intention could not have been to use them in their ordinary signification, and to justify the court in putting on them some other signification, which, though less proper, is one which the court thinks the words will bear.' ").

than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability. The act is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act.

1983 Wis. Act 418, § 1.

■

¶ 22. Thus, while it has often been said that "[t]he intent of sec. 895.52, Stats., is to encourage landowners to open up their land for recreational activity," *Crowbridge,* 179 Wis. 2d at 572 (citing *Ervin,* 159 Wis. 2d at 475), it is abundantly clear from the language of the statute and the statement of legislative intent that the purpose of the statute is broader, and recreational immunity is not in fact limited only to *landowners.*

¶ 23. As noted above, the legislature specified that Wis. Stat. § 895.52 is to be "liberally construed in favor of property owners to protect them from liability." 1983 Wis. Act 418, § 1; *see also Ervin,* 159 Wis. 2d at 476; *Sievert v. American Family Mut. Ins. Co.,* 190 Wis. 2d 623, 630, 528 N.W.2d 413, 417 (1995); *Schultz v. Grinnell Mut. Reinsurance Co.,* 229 Wis. 2d 513, 518, 600 N.W.2d 243, 246 (Ct. App. 1999); *Stann v. Waukesha County,* 161 Wis. 2d 808, 825, 468 N.W.2d 775, 782 (Ct. App. 1991). Peterson's interpretation operates to exclude from the definition of "property" any building, structure or improvement owned by someone other than the real property owner, or, conversely, to include

only those buildings, structures or improvements that are owned by the real property owner. This sort of restrictive interpretation is inconsistent with the language of the statute and the legislative directive that it be liberally construed in favor of immunity for property owners.[7]

¶ 24. Accordingly, we conclude that a person who owns a "building, structure or improvement" on real property owns "property" as that term is defined in Wis. Stat. § 895.52(1)(f), even if he does not own the underlying real property. Shaw's tree stand was a "structure" as that term is commonly and ordinarily understood. Therefore, Shaw owned "property" within the meaning of the recreational immunity statute.[8] Because Peterson was engaged in a specifically enumerated "recreational activity"—deer hunting—when he fell from Shaw's tree stand and was injured, Shaw is entitled to

---

[7] The dissent argues that our reading of the statute violates the rules of grammar and punctuation. Dissent at ¶¶ 47–55. We do not disagree that courts sometimes look to grammatical rules when interpreting legal texts. But interpreting a legal text is not like diagramming a sentence or correcting an English paper. The rules of grammar and punctuation should not be applied at the expense of a natural, reasonable reading of the statutory language (taking into account the context in which it appears and the purpose of the statute), or when the result is an expansion or contraction of the statute contrary to its terms. Here, strict adherence to the "rule of the serial comma" as advocated by the dissent operates to add a substantive requirement to the statute that it otherwise does not contain.

[8] The circuit court also held that Shaw was an "occupier" of property under the statute. Because we conclude that Shaw owned "property" as that term is defined in the statute, we need not address whether Shaw also, or alternatively, "occupied" property.

recreational immunity under Wis. Stat. § 895.52(2).[9] Summary judgment dismissing the case was therefore appropriate, and we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 25.   DAVID T. PROSSER, J. (*concurring*). This case presents a question of statutory interpretation. Our objective, as always, is to discern the intent of the legislature. *Peters v. Menard, Inc.,* 224 Wis. 2d 174, 184, 589 N.W.2d 395 (1999). If the language of the statute clearly and unambiguously sets forth the legislative intent, the court has a duty to apply that intent to the case and not look beyond the text for a different meaning. *Reyes v. Greatway Ins. Co.,* 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999). When one of several interpretations is possible, the court must ascertain legislative intent from the language of the statute in relation to a number of extrinsic factors including the legislative object intended to be accomplished. *Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 248, 493 N.W.2d 68 (1992).

---

[9] The dissent contends that our interpretation of the statute does not "comport with the idea that recreational activity takes place outdoors. How does one enter a building or structure in order to engage in an outdoor activity?" Dissent at ¶ 62. The suggestion seems to be that one almost never enters *into* a building or structure to engage in *outdoor* activity. However, in addition to the tree stand at issue in this case (which the dissent apparently concedes is a structure used for outdoor activity, *see* dissent at ¶ 64), there are other buildings that one *does* enter for purposes of engaging in outdoor recreational activity: open air park pavilions, observation towers, gazebos, or screen houses used for picnics, and so on.

¶ 26. The punctuation in Wis. Stat. § 895.52(1)(f) makes the subsection ambiguous in the sense that reasonable minds could differ as to how many categories of property the subsection envisions. *Cf. Hacker v. State Dep't of Health and Social Services*, 197 Wis. 2d 441, 455, 541 N.W.2d 766 (1995). This ambiguity permits us to look beyond the text for the scope, history, context, and subject matter of the statute, as well as its purpose or object. *See State v. Piddington*, 2001 WI 24, ¶ 14, 241 Wis. 2d 754, 623 N.W.2d 528, *cert. denied*, 122 S.Ct. 65 (2001); *Clark v. American Family Mut. Ins. Co.*, 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998).

¶ 27. Wisconsin Stat. § 895.52 creates a very broad recreational immunity with certain exceptions. This immunity applies to owners of property and to *agents* of owners.[1] Wis. Stat. § 895.52(2). An owner is defined to include a "person . . . that owns, leases or occupies property." Wis. Stat. § 895.52(1)(d)1. To prevent summary judgment, the petitioners must show that Harold Shaw was not an owner (in any of three senses) or an agent of an owner of "property."

¶ 28. The statute defines "property" as follows: " 'Property' means real property and buildings, structures and improvements thereon, and the waters of the state, as defined under s. 281.01(18)." Wis. Stat. § 895.52(1)(f).

¶ 29. We should not overlook the obvious. The definition of "property" applies to more than land. It applies to "buildings, structures and improvements" on land. The legislature must have had good reason for including more than land in its definition.

---

[1] The parties pay little attention to the potential argument that Harold Shaw was an "agent" of Vernon and Culleen Peterson.

¶ 30. There should be no question that a tree stand is a "structure" and that this structure was owned by Harold Shaw.

¶ 31. Petitioners contend, however, that the statutory definition of "property" requires an ownership linkage between land and any building, structure, or improvement on the land—that a building alone, or a structure alone, or an improvement alone is not "property" within the statute. This contention is based upon the proposition that the definition creates only two categories of property: (1) real property along with any buildings, structures and improvements on that property; and (2) the waters of the state. The dissent summarizes the petitioners' position: "if the statute defines only two categories of 'property,' the owner of a structure, building, or improvement may enjoy immunity only if that owner also owns the underlying land." Dissent at ¶ 46.

¶ 32. The petitioners' position may be stated as follows: An owner is a person that owns "property," that is, "real property and buildings, structures and improvements thereon." Shaw owned a "structure" on real property but he did not own the real property. Therefore, Shaw did not own "property" as defined under the statute.

¶ 33. There is a serious flaw in this formulation. If a person does not own "property" unless he or she owns "real property" *and* the "buildings, structures and improvements" on that real property, then a person who owns land but does *not* own the "buildings, structures and improvements" on that land does *not* own "property" and is presumably not immune. This result follows a literal reading of the two-category definition but is absurd. An even more absurd reading of the two-category definition is that the owner of "real property" is

581

not immune unless the real property has "buildings, structures and improvements thereon."

¶ 34. The two-category definition of property must be scrutinized in other ways. For instance, the statute provides that an owner is a person that *owns, leases* or *occupies* real property and buildings, structures and improvements thereon. For purposes of this statute, a person who qualifies as a lessee or occupier of property has as much right to assert recreational immunity as the person who holds title to the property. The proposition that an *owner* of a structure, building, or improvement may enjoy immunity only if the owner also owns the underlying land unravels if we state the parallel proposition that the *lessee* of a structure, building, or improvement may enjoy immunity only if the lessee leases the underlying land, because the latter proposition would severely limit recreational immunity for lessees.

¶ 35. The two-category analysis appears to view buildings, structures, and improvements as relatively unimportant to the recreational immunity at issue. The petitioners' brief forthrightly acknowledges examples of buildings and structures that are integrally related to recreation: a washroom at a campground, *Szarzynski v. YMCA,* 184 Wis. 2d 875, 517 N.W.2d 135 (1994); a pier on a lake, *Crowbridge v. Village of Egg Harbor,* 179 Wis. 2d 565, 508 N.W.2d 15 (Ct. App. 1993); a beach house at the beach, *Stann v. Waukesha County,* 161 Wis. 2d 808, 468 N.W.2d 775 (Ct. App. 1991); and a swing in a park, *Kruschke v. City of New Richmond,* 157 Wis. 2d 167, 458 N.W.2d 832 (Ct. App. 1990). But it denies that the legislature intended to afford immunity if the owners of such buildings or structures do not also own the underlying land. Precise logical constructs do not work very well with such enumerated recreational activities as

"horseback riding," "ballooning," "hang gliding," and "climbing observation towers." *See* Wis. Stat. § 895.52(1)(g). Did the legislature really intend to deny immunity to the owner of an "observation tower" if the owner of the tower does not also own the underlying land?

¶ 36.  For this court to rely on very subtle distinctions to resolve this case would not only miss the big picture but also invite litigants to explore whether condominium owners, utilities that own utility poles but not the underlying land, and land contract purchasers do not have recreational immunity because their ownership of buildings or structures on recreational property is somehow incomplete.

¶ 37.  "The life of the law has not been logic: it has been experience."[2] In this case, the logic of grammatical rules fails to account for the legislative history of the statute.

¶ 38.  The 1983 legislature approved an expansive revision of recreational immunity. 1983 Wis. Act 418. The revision included repeal of Wis. Stat. § 29.68, which provided in part that "[a]n owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for . . . recreational purposes . . . except as provided in sub. (3)." Wis. Stat. § 29.68(1) (1981–82). This statute defined "premises" to include "lands, private ways and any buildings, structures and improvements thereon." Wis. Stat. § 29.68(5)(a) (1981–82).

¶ 39.  The bill that revised the law was 1983 Senate Bill 586. When it was first introduced, the bill carried the following definition of property: " 'Property'

---

[2] Oliver Wendell Holmes Jr., The Common Law 1 (1881) (based upon 1880 Lowell Lecture).

means real property, wherever located, lakes and streams adjacent to real property, and personal property thereon." Legislative Reference Bureau Drafting File for 1983 Wis. Act 418, 1983 Senate Bill 586 (as introduced February 1, 1984).

¶ 40.  A Senate substitute amendment provided a new definition of property:

> (f) "Property" means any of the following:
>
> 1. Unplatted real property owned by any person and located outside the corporate limits of a city or village, and personal property thereon.
>
> 2. Unplatted real property within the corporate limits of a city or village with a population of less than 2,500, and personal property thereon.
>
> 3. Platted or unplatted real property which is within the corporate limits of a city or village and which is subject to a recreational agreement, and personal property thereon.
>
> 4. Waters of the state, as defined under s. 144.01(19), whether or not adjacent to the property described under subd. 1 to 3.

Legislative Reference Bureau Drafting File for 1983 Wis. Act 418, Senate Substitute Amendment 1 to 1983 Senate Bill 586.

¶ 41.  The Senate approved the substitute amendment and sent the amended bill to the Assembly where it was changed. Legislative Reference Bureau Drafting File for 1983 Wis. Act 418, Legislative History of 1983 Senate Bill 586. The drafting file indicates that the Wisconsin Paper Council submitted a handwritten amendment on behalf of Representative Tommy Thompson to this effect: Property "means real property

584

and any buildings, structures and improvements thereon under public or private ownership, and the waters of the state. . . . " Legislative Reference Bureau Drafting File for 1983 Wis. Act 418, Drafting Request (March 28, 1984). The Legislative Reference Bureau took this language and prepared an amendment that read: " 'Property' " means real property and buildings, structures and improvements thereon, and the waters of the state, as defined under 144.01(19)." Legislative Reference Bureau Drafting File for 1983 Wis. Act 418, Assembly Amendment 1 to 1983 Senate Bill 586.

¶ 42. This history demonstrates that the present definition was not written under laboratory conditions, free of historical and political influence. For instance, the word "thereon" appeared in prior law and in every draft of the bill with varying implications. It appeared in a definition conceived outside the legislature. The record also shows evidence of the "serial comma rule" in some texts but not in others. Punctuation in the texts is not consistent. Hence, it would be very difficult to conclude that the punctuation now before the court dictates a substantive result different from the one reached by the court.

¶ 43. Consequently, I support the majority's conclusion that Wis. Stat. § 895.52 "does not require that the owners of 'buildings, structures and improvements' also own the underlying real property in order to qualify for immunity." Majority op. at ¶ 4. This conclusion fairly reflects the intent of the legislature.

¶ 44. ANN WALSH BRADLEY, J. *(dissenting)*. The recreational immunity statute defines "property" as: "real property and buildings, structures and improvements thereon, and the waters of the state."

¶ 45. The essence of the majority opinion rests on its conclusion that this definition of property unambiguously creates three distinctly defined categories of property. Yet, the majority is able to reach this conclusion only by dismissing or ignoring rules of grammar and glossing over the ambiguity inherent in this definition. I conclude that the statute's definition of property is ambiguous and that the majority's bright-line, three-category interpretation conflicts with the legislative intent to provide immunity for *outdoor* activity.

¶ 46. The parties have framed the question of immunity in this case as dependent on whether the statute creates two or three categories of property. According to Peterson, if the statute defines only two categories of property, the owner of a structure, building, or improvement may enjoy immunity only if that owner also owns the underlying land. If, however, the statute defines three categories of property under the majority approach, then an owner of a structure, building, or improvement is immune regardless of the ownership of the land on which that structure, building, or improvement stands. Rather than focusing on whether there are two or three categories, I conclude that there are several constructions of the definition of property.

## I. USE OF GRAMMAR

¶ 47. It is only by selectively dismissing or ignoring the legislature's use of commas that the majority is able to avoid the ambiguity in the statute and give it a reading that creates three distinctly defined categories of property. The majority declares, "[w]e decline to give the absence of a comma such interpretive significance." Majority op. at ¶ 19.

¶ 48. I question whether the legislature's choice of punctuation in a statute may be dismissed so easily.

Case law abounds with disputes that revolve around the placement of a comma in a statute or other writing. *See State ex rel. Ahlgrimm v. State Elections Bd.,* 82 Wis. 2d 585, 590, 263 N.W.2d 152 (1978) (use of comma after phrase in statute provides grammatical support for particular conclusion); *see also State v. Stepniewski,* 105 Wis. 2d 261, 275, 314 N.W.2d 98 (1982); *Mahon v. Security First Nat'l Bank,* 56 Wis. 2d 171, 179, 201 N.W.2d 573 (1972); *Baker v. McDel Corp.,* 53 Wis. 2d 71, 79, 191 N.W.2d 846 (1971) ("[w]e cannot ignore punctuation when interpreting a contract"); *Georgiades v. Glickman,* 272 Wis. 257, 263, 75 N.W.2d 573 (1956) ("the insertion of the comma . . . does present an issue of interpretation"); *Jauqet Lumber Co. v. Kolbe & Kolbe Millwork Co.,* 164 Wis. 2d 689, 700, 476 N.W.2d 305 (Ct. App. 1991) ("[f]or the trial court's reading to be correct there would have to be a comma inserted").

¶ 49.  The sentence we are interpreting in subsection (f) defines property as "real property and buildings, structures and improvements thereon, and the waters of the state." (Emphasis added.) There are two commas in the above quoted definition. Why is that important to note? The foundation of the majority opinion rests on dismissing the placement of the first comma and completely ignoring the second comma. If the majority acknowledges the placement of these commas, it cannot reach its conclusion that the statute unambiguously creates immunity for owners of three distinctly defined categories of property.

¶ 50.  Admittedly, the rules of grammar are only tools to assist in interpretation and should not be mechanistically applied at the expense of a natural reading of the text and its purpose. Here, however, in examining a short, 14–word definition, the majority discards or ignores not one, not two, but three rules of

grammar. Essentially, without explanation, the majority attempts to divorce its interpretation from the accepted use of grammar. Such an attempt calls into question the validity of the majority's approach.

### The First Comma

¶ 51. The majority's interpretation violates the rule of the serial comma: in a series of three or more, a comma shall appear after the first term or category listed. *See The Gregg Reference Manual* 15 (9th ed. 2001). The majority contends that the first distinct category listed is "real property." Thus, a comma should appear after this first category—but none appears. Instead, the first comma appears after the word "buildings." Such a placement is inconsistent with the majority's interpretation. The majority cannot reconcile its interpretation with the legislature's placement of this comma. Unable to explain it, the majority dismisses the placement of the comma as insignificant.

### The Second Comma

¶ 52. A review of the surrounding text of the statute demonstrates that the drafter of the statute adheres to the rule: in a series of three or more, no comma is used preceding the final conjunction. Let me illustrate.

¶ 53. In the text of the recreational immunity statute, the definition of "recreational activity" immediately follows the sentence that we are interpreting in this case. The definition contains a serial listing. "Recreational activity" is defined as an activity undertaken "for the purpose of exercise, relaxation or pleasure." Consistent with the rule, no comma is used preceding the final conjunction, "or."

¶ 54. Likewise, the next sentence in the text also contains a serial listing of three or more terms which concludes with "any other sport, game or educational activity." Again, consistent with the rule, no comma is used before the final conjunction.

¶ 55. The majority's interpretation of three distinct categories of property, however, is inconsistent with the rule. The drafter placed a comma before the conjunction, "and." Such a placement suggests that the drafter did not intend to create three categories.

¶ 56. The opinion of the majority fails to discuss or even acknowledge the placement of the second comma. Instead, it ignores it. The majority offers no explanation why the surrounding text of the statute adheres to the rule while the majority's interpretation is inconsistent with the rule.

The Use of the Term "thereon"

¶ 57. The majority concludes that "buildings, structures and improvements thereon," is one of three clearly distinct categories. In arriving at this conclusion, it ignores the dictionary meaning of "thereon." The term means "on *that*" or "concerning *that subject.*" *Webster's New Universal Unabridged Dictionary* 1894 (2d ed. 1983) (emphasis added).

¶ 58. The definition of property set forth in subsection (f) states: "real property and buildings, structures and improvements thereon, and the waters of the state." If the drafter had intended "buildings, structures and improvements thereon," to be a distinct category, the statute should read "buildings, structures and improvements *on real property.*" Instead, the drafter used the term "thereon," which signals that the buildings, structures and improvements are to be on *that* specific

real property referred to in the first part of the defini-
tion. The plain meaning of the term "thereon" conflicts
with the majority's conclusion that the drafter clearly
intended to create three distinctly defined categories of
property.

## II. THE DEFINITION OF
## "PROPERTY" IS AMBIGUOUS

¶ 59.   We cannot ignore punctuation when inter-
preting a statute. The above discussion demonstrates,
at the very least, that the definition of "property" is
ambiguous. The majority is simply incorrect in its
conclusion that the statute clearly and unambiguously
creates immunity for owners of three distinctly defined
categories of property.

¶ 60.   I conclude that there are several construc-
tions of the language in subsection (f). First, as Peter-
son advances, the definition could be interpreted to
identify two categories of property:   (1) real property
along with the buildings, structures, and improvements
on that real property, and (2) the waters of the state.
Second, as a variation on Peterson's approach, the
definition could be interpreted to include three catego-
ries, but a different three than those identified by
Midwest and the majority:   (1) real property, (2) build-
ings, structures and improvements on that real prop-
erty, and (3) the waters of the state. Third, as Midwest
argues, the definition could be interpreted to identify
the following three categories:   (1) real property, (2)
any buildings, structures, and improvements on any
real property, and (3) the waters of the state. Fourth,
the definition could be interpreted to identify three
categories of property, but again a different three than
those identified by Midwest and the majority:   (1) real
property and buildings, (2) structures and improve-

ments thereon, and (3) the waters of the state. Rather than addressing the ambiguity, the majority summarily concludes that the "clear" language is consistent with legislative intent.

## III. LEGISLATIVE INTENT

¶ 61. Having concluded that the definition of "property" is ambiguous, I look to the purpose of the statute as evidence of legislative intent. *McDonough v. DWD*, 227 Wis. 2d 271, 277, 595 N.W.2d 686 (1999); *Miller v. Mauston School Dist.*, 222 Wis. 2d 540, 548, 588 N.W.2d 305 (Ct. App. 1998). Based on the purpose of the recreational immunity statute, it is difficult to determine that the legislature intended to create the three categories the majority has identified.

¶ 62. The purpose of the statute focuses on recreational activity. Because recreational activity is defined as outdoor activity under the statute, it makes little sense for the majority to define all buildings and structures as "property." The majority's definition of property that includes any buildings and structures, regardless of where they stand, can hardly be said to comport with the idea that recreational activity takes place outdoors. How does one enter a building or structure in order to engage in an outdoor activity?

¶ 63. Although I agree with the majority's analysis of the legislative purpose that accompanied the repeal of the old recreational immunity statute, Wis. Stat. § 29.68, and its replacement with Wis. Stat. § 895.52, this analysis offers little assistance in resolving the issues in this case. The majority notes that the purpose of the statute has been stated as: to immunize "property owners" against liability "for any injury to a person engaged in a recreational activity on

the owner's property." Majority op. at ¶ 12. However, this statement of purpose serves only to beg the question in this case because it says nothing about who is an "owner" or what is "property," which are precisely the issues before us.

¶ 64.   In short, the recreational immunity statute, by its very essence, contemplates activities that take place out-of-doors. Nonetheless, the majority has immunized an entire class of property owners, where the underlying property, by its very nature, will usually encompass indoor activity. In this case, the fact that Peterson was hunting upon a "structure" that happened to be nothing more than a non-enclosed platform attached to a tree obscures the breadth of the majority's three-category rule. The result may appear to comport with the legislative intent in this case, but what of others down the road?

¶ 65.   I disagree with the majority's basic premise that the statute unambiguously creates immunity for owners of three distinctly defined categories of "property." Additionally, I conclude that the majority's broad definition cannot be what the legislature intended. Accordingly, I respectfully dissent.