# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP1508 |
| COMPLETE TITLE: | Patti J. Roberts and David Roberts, |
| | Plaintiffs-Appellants-Petitioners, |
| | v. |
| | T.H.E. Insurance Company, Sundog Ballooning, LLC, Kerry M. Hanson and Jodi L. Hanson, |
| | Defendants-Respondents, |
| | Dean Health Plan, Inc., |
| | Defendant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 363 Wis. 2d 656, 862 N.W.2d 656)
(Ct. App. 2015 – Unpublished)

| | |
|---|---|
| OPINION FILED: | March 30, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 15, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dodge |
| JUDGE: | Joseph G. Sciascia |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ZIEGLER, J. concurs. |
| CONCURRED/DISSENTED: | PROSSER, J., joined by ROGGENSACK, C.J. concur and dissent. |
| DISSENTED: | BRADLEY, R.G., J., joined by PROSSER, J. (except footnote 4) dissent. |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs by *Timothy S. Knurr* and *Gruber Law Offices, LLC*, Milwaukee and oral argument by *Timothy S. Knurr*.


For the defendants-respondents, there was a brief by *Ward I. Richter, David G. Ress* and *Bell, Moore & Richter, S.C.*, Madison, WI and oral argument by *David G. Ress*.

2016 WI 20

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2014AP1508
(L.C. No.  2013CV391)

STATE OF WISCONSIN          :          IN SUPREME COURT

**Patti J. Roberts and David Roberts,**

　　　**Plaintiffs-Appellants-Petitioners,**

　　v.

**T.H.E. Insurance Company, Sundog Ballooning, LLC, Kerry M. Hanson and Jodi L. Hanson,**

　　　**Defendants-Respondents,**

**Dean Health Plan, Inc.,**

　　　**Defendant.**

**FILED**

**MAR 30, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded*.

¶1　ANN WALSH BRADLEY, J.　Petitioners, Patti and David Roberts, seek review of an unpublished court of appeals decision that affirmed the circuit court's order for summary judgment, dismissing their claims.[1]　The court of appeals determined that

---

[1] Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., (Wis. Ct. App. Mar. 26, 2015) (affirming order of
(continued)

Wisconsin's recreational immunity statute barred the petitioners' claims because Patti Roberts was engaged in the recreational activity of hot air ballooning at the time she was injured.[2]

¶2 Roberts argues that the respondents, Sundog Ballooning, LLC, Kerry Hanson, Jodi Hanson, and T.H.E. Insurance Company (collectively "Sundog") are not entitled to immunity pursuant to Wis. Stat. § 895.52 because Sundog was not an owner under the statute. She contends that Sundog was neither an "occupier" of the land nor was the hot air balloon "property."[3]

¶3 In reply, Sundog asserts that even if it were not entitled to immunity under Wis. Stat. § 895.52, Roberts' claims are barred because she signed a waiver of liability form.

¶4 We conclude that Sundog is not entitled to recreational immunity pursuant to Wis. Stat. § 895.52 because it is not an owner under the statute. Sundog was not an "occupier" of the land and the hot air balloon was not "property" because

---

summary judgment entered by the circuit court for Dodge County, Joseph G. Sciascia, J., presiding).

[2] Although Patti's husband, David Roberts, is also a petitioner, we will refer to Patti Roberts as the lone petitioner for ease of discussion.

[3] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

it was not a "structure."[4] Finally, we determine that Sundog's waiver of liability form violates public policy and is unenforceable as a matter of law. Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings.

I.

¶5 The relevant facts of this case are undisputed. Patti J. Roberts was injured at a charity event sponsored by Green Valley Enterprises ("Green Valley"). Beaver Dam Conservationists, LLC ("the Conservationists") owned the shooting range where the charity event was held.

¶6 Sundog Ballooning, LLC was the owner and operator of a hot air balloon providing tethered rides at the event. Kerry and Jodi Hanson, the owners of Sundog, donated hot air balloon rides to promote Green Valley's charity event.

¶7 On the day of the event, Sundog set up a display, a sign-up table and a waiting area for the ride. The hot air balloon was tethered to two trees and a pick-up truck. During

---

[4] Roberts also argues that Sundog is not entitled to immunity under Wis. Stat. § 895.52 because Sundog's negligence was not associated with a condition of the land. We need not reach this argument because we conclude that Sundog was not an owner under the statute. The issue of whether a party's negligence is associated with a condition of the land applies only if that party is an owner under the statute. See, e.g., Linville v. City of Janesville, 184 Wis. 2d 705, 719, 516 N.W.2d 427 (1994); see also Kosky v. Int'l Ass'n of Lions Clubs, 210 Wis. 2d 463, 475, 565 N.W.2d 260 (Ct. App. 1997).

rides, the balloon operator raised the balloon to the length of the ropes and then lowered it back to the ground.

¶8 Patti Roberts and her family watched the balloon rides and then entered the line to take a ride. While in line, Sundog gave Roberts a waiver of liability form that she was required to sign prior to riding in the hot air balloon. Roberts signed the waiver form, but never returned it to Sundog. The signed waiver form was found on the event grounds after Roberts sustained her injuries.

¶9 The liability waiver form states in part:

I expressly, willing, and voluntarily assume full responsibility for all risks of any and every kind involved with or arising from my participation in hot air balloon activities with Company whether during flight preparation, take-off, flight, landing, travel to or from the take-off or landing areas, or otherwise.

Without limiting the generality of the foregoing, I hereby irrevocably release Company, its employees, agents, representatives, contractors, subcontractors, successors, heirs, assigns, affiliates, and legal representatives (the "Released Parties") from, and hold them harmless for, all claims, rights, demands or causes of action whether known or unknown, suspected or unsuspected, arising out of the ballooning activities . . . .

¶10 After signing the form, Roberts waited in line for 20 to 30 minutes. During this time, strong winds caused one of the balloon's tether lines to snap. As a result, the untethered balloon moved toward the spectators in line. Roberts was injured when she was struck by the balloon's basket and knocked to the ground.

4

¶11 The evidence submitted to the circuit court demonstrated that defendant Kerry Hanson, the balloon operator, had limited experience with tethered ballooning before giving rides at Green Valley's event. Hanson testified in his deposition that he should have obtained information regarding weather fronts in the area. Had he known about the weather front on the day Roberts was injured, Hanson testified that he would have suspended the ride.

¶12 Hot air ballooning is governed by FAA guidelines and rules. See, e.g., Fed. Aviation Admin., U.S. Dep't. of Transp., Pub. No. FAA-H-8083-11A, Balloon Flying Handbook 7-13 (2008). The FAA's safety recommendations instruct the balloon operator to plan for the failure of one or more of the tethered lines and have a backup plan for safety. See id. at 7-14. In addition, the operator should organize participants "far back" from the balloon and tether lines. Id. At his deposition, Hanson agreed that had he moved the sign-up table and waiting line further back from the balloon, Roberts would not have been injured.

¶13 Roberts filed a lawsuit against Sundog, alleging that its negligence caused her injuries. Sundog moved the circuit court for summary judgment, arguing that it is entitled to immunity under Wis. Stat. § 895.52 and that Roberts' claims were barred by the waiver of liability form that she signed.

¶14 The circuit court granted Sundog's summary judgment motion, dismissing Roberts' claims and concluding that Sundog was entitled to immunity under Wis. Stat. § 895.52. It also determined that the waiver of liability form Roberts signed was

5

valid as a matter of law, although an issue of fact remained as to whether she had accepted the terms.

¶15 On appeal, Roberts argued that Sundog is not entitled to immunity because her injury was not related to a condition associated with the land. Roberts asserted that under Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994) and Kosky v. Int'l Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997), no immunity attaches for negligent conduct unassociated with the land.

¶16 The court of appeals rejected Roberts' argument, determining that it was "based on a misreading of the case law . . . which has no application to the facts of this case."[5] See Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., ¶17 (Wis. Ct. App. Mar. 26, 2015). It explained that this was "the only argument that Roberts makes directed to the application of Wis. Stat. § 895.[52]." Id., ¶22. The court of appeals did not address the validity of the liability waiver

---

[5] This Court has previously expressed its concern that the recreational immunity statue is often difficult to apply and has recommended that the legislature reexamine this statute. See, e.g., Auman v. School Dist. Of Stanley-Boyd, 2001 WI 125, ¶11, 248 Wis. 2d 548, 635 N.W.2d 762 ("This court has wrestled with applying the recreational immunity statute . . . since its enactment. . . . We continue to be frustrated in our efforts to state a test that can be applied easily because of the seeming lack of basic underlying principles in the statute."); see also Urban v. Grasser, 2001 WI 63, ¶12, 243 Wis. 2d 673, 627 N.W.2d 511 ("Circuit courts, the court of appeals, and this court have wrestled with recreational immunity since the legislature first provided for such immunity under the law. We have all been frustrated by the seeming lack of basic underlying principles in our efforts to state a test that can be easily applied.").

6

form because its decision as to immunity disposed of the appeal. Id., ¶2 n.2.

¶17 Before this court, Roberts renews her argument that Sundog's negligence was not connected to a condition associated with the land. Because this court ordered briefing on an additional issue, she also asserts that Sundog is not entitled to immunity under Wis. Stat. § 895.52 because it is not an owner under the statute. Roberts argues that Sundog was not an "occupier" of the land and that the hot air balloon was not "property" because it was not a "structure." Sundog replies that even if it is not entitled to immunity under Wis. Stat. § 895.52, Roberts' claims are barred because she signed a waiver of liability form.

## II.

¶18 In this case we are asked to review the circuit court's grant of summary judgment. We review grants of summary judgment applying the same methodology employed by the circuit court. Belding v. Demoulin, 2014 WI 8, ¶13, 352 Wis. 2d 359, 843 N.W.2d 373. Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the moving party is entitled to [] judgment as a matter of law." Wis. Stat. § 802.08(2).

¶19 Here, there is no genuine issue of material fact. Accordingly, we focus on whether the application of Wis. Stat. § 895.52 bars Roberts' claims. Statutory interpretation presents a question of law that we review independently of the determinations rendered by the circuit court and the court of

appeals. State v. Dinkins, 2012 WI 24, ¶28, 339 Wis. 2d 78, 810 N.W.2d 787.

¶20 In interpreting a statute we begin by examining its language, giving words and phrases their common, ordinary, and accepted meaning. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language must be interpreted reasonably to avoid absurd or unreasonable results. Id., ¶46.

¶21 When the legislature has expressly stated the purpose of a statute, the purpose is relevant to the plain meaning interpretation of the statute. See id., ¶48. "[A] plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." Id., ¶49.

¶22 In examining an exculpatory contract, we likewise apply the same summary judgment methodology as employed by the circuit court. See Richards v. Richards, 181 Wis. 2d 1007, 1010-11, 513 N.W.2d 118 (1994) (citing Dobratz v. Thompson, 161 Wis. 2d 502, 513, 468 N.W.2d 654 (1991)). The validity of an exculpatory contract is reviewed as a matter of law. Id. at 1011.

### III.

¶23 We begin our analysis with a brief explanation of what is not in dispute. Neither party disputes that Roberts was participating in a recreational activity at the time she was injured because ballooning is listed in the statutory definition of "recreational activity." Wis. Stat. § 895.52(1)(g) defines "recreational activity" as: [A]ny outdoor activity undertaken

8

for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes hunting, fishing, trapping, camping,... <u>ballooning</u>, hang gliding, hiking . . . ." (emphasis added).

¶24 Furthermore, "[t]he case law is clear that a spectator who attends a recreational activity is engaged in a recreational activity." <u>Meyer v. School Dist. Of Colby</u>, 226 Wis. 2d 704, 710, 595 N.W.2d 339 (1999); <u>see also</u> <u>Linville</u>, 184 Wis. 2d at 717 (concluding that preparation for a recreational activity that takes place at a recreational facility that is open for public use is a "recreational activity" as defined by Wis. Stat. § 895.52(g)). Given that Roberts was on recreational land open to the public, watching the balloon rides as a spectator, and preparing for the balloon ride by waiting in line, she was engaged in a "recreational activity" as defined by Wis. Stat. § 895.52(g).

A.

¶25 Although Roberts does not dispute that she was engaged in a recreational activity, she does contest the issue of immunity. Roberts argues that Sundog is not entitled to immunity as an occupier of the property where she was engaged in a recreational activity.

¶26 The recreational immunity statute Wis. Stat. § 895.52 provides:

(2) NO DUTY; IMMUNITY FROM LIABILITY.

(a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to

9

any person who enters the owner's property to engage in a recreational activity:

    1.    A duty to keep the property safe for recreational activities.

    2.    A duty to inspect the property, except as provided under s. 23.115(2).

    3.    A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employee, or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property . . . .

¶27 Wis. Stat. § 895.52(1)(d)1 defines an "owner" as "[a] person, including a governmental body or nonprofit organization, that owns leases or occupies property." Wis. Stat. § 895.52(1)(f) further defines "property" as "real property and buildings, structures and improvements thereon . . . ."

¶28 The legislative purpose of the recreational immunity statute is set forth in 1983 Wis. Act 418, § 1. Its stated purpose is to limit liability in order to encourage property owners to open their lands to the public:

The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability . . . . 1983 Wis. Act 418, § 1.

10

As our cases have explained, "the impetus for this law is the continual shrinkage of the public's access to recreational land in the ever more populated modern world." Hall v. Turtle Lake Lions Club, 146 Wis. 2d 486, 489, 431 N.W.2d 696 (Ct. App. 1988).

¶29 In reply, Sundog argues that it is entitled to recreational immunity because Roberts was injured at an event similar to those in prior cases. Sundog asserts that it is entitled to immunity as an "occupier" of the land, for the same reasons that the producer of a fair or event qualifies for recreational immunity. Prior cases interpreting Wisconsin's recreational immunity law have concluded that the producer of a fair or event "occupied" property. See, e.g., Id., at 490; Lee v. Elk Rod & Gun Club, Inc., 164 Wis. 2d 103, 106, 473 N.W.2d 581 (Ct. App. 1991); Weina v. Atlantic Mut. Ins. Co., 179 Wis. 2d 774, 777 n.2, 508 N.W.2d 67 (Ct. App. 1993).

¶30 As Sundog's counsel aptly argued, Wisconsin courts have concluded private organizations hosting an event on land they did not own are entitled to recreational immunity. In Hall, the plaintiff was injured when he stepped in a hole on the grounds of the Turtle Lake Village Park during a fair sponsored by the Turtle Lake Lions Club. 146 Wis. 2d at 487. The Lion's Club was not the titled owner of the land on which it held the fair. Id. at 490. The court of appeals concluded that the Lions Club was entitled to recreational immunity as a "landowner" that allowed Hall entry for "recreational activity." Id. at 487-89.

11

¶31 Likewise, in Lee, the plaintiff was injured when he slipped and fell on icy ground beneath a tent erected by the Elk Rod & Gun Club for a fishing contest on Bugle Lake. 164 Wis. 2d at 105. Lee explained that "[t]he club, as an occupant of the city park land, is treated as a landowner for purposes of recreational immunity." Id. at 107 (citing Hall, 146 Wis. 2d at 490-91).

¶32 Again, in Weina, the plaintiff was injured playing softball at a church picnic held at a public park. 179 Wis. 2d at 776. The plaintiff sued both the church and the teammate who hit the injurious baseball. Id. Granting summary judgment in favor of the church, the circuit court denied the teammate's motion for summary judgment. Id. at 77 n.1. The court of appeals affirmed the circuit court's judgment that the church, as the event organizer, was entitled to immunity. Id. at 779.

¶33 This case is different from prior cases, however, because Roberts did not bring claims against the event producer or owner of the property. Green Valley Enterprises, not Sundog, produced the charity event where Roberts was injured. The Conservationists, not Sundog, was the owner of the property where the event took place. None of the prior cases interpreting Wis. Stat. § 895.52 has granted immunity to a third party not responsible for opening up the land to the public.[6]

---

[6] Wis. Stat. § 895.52(2) grants immunity to officers, employees, or agents of an owner. Because the parties in this case did not argue or brief the issue of whether Sundog was an officer, employee, or agent of either the Conservationists or
(continued)

12

¶34  The distinction between Sundog and the producer of a fair or event is supported by case law analyzing the definition of "occupy" in the context of the statute's policy.  In Doane v. Helenville Mut. Ins. Co., 216 Wis. 2d 345, 355, 575 N.W.2d 734 (Ct. App. 1998), the court of appeals held that the owner of an ice shanty was not an occupier under Wis. Stat. § 895.52.  As Doane explained, "occupy" is defined as "to take and hold possession."  Id. at 354 (citing Webster's New Collegiate Dictionary 794 (8th ed. 1974)).  The term "occupy," as it is used in Wis. Stat. § 895.52, has been defined as "requiring a degree of permanence, as opposed to mere use."  Id. (citations ommitted).

¶35  Underlying the Doane decision was the same statutory policy at issue here.  As Doane explained, to define the owner of the ice shanty as an occupier "would not further the policy which underlies the statute, i.e., of opening as much property as possible for recreational use, because the lake was already held in trust for public recreational purposes, such as fishing."  Id. at 355.  Here, as in Doane, defining Sundog as an "occupier" would not further the policy underlying the statute because the Conservationists' property was already open for public recreational purposes.

---

Green Valley, we do not address it.  We need not address issues that have not been raised or argued by the parties.  See, e.g., State v. Steffes, 2013 WI 53, ¶28, 347 Wis. 2d 683, 832 N.W.2d 101.

13

¶36 The Linville court also explained that we must consider whether immunity will encourage landowners to open the land for public use:

> The benefits of granting immunity, i.e., encouraging landowners to open their lands to the public, comes from immunizing people or municipalities in their capacities as landowners . . . . Extending immunity to landowners for negligently performing in a capacity unrelated to the land . . . will not contribute to a landowner's decision to open the land for public use.

184 Wis. 2d 705.

¶37 Here, it was Green Valley and the Conservationists——not Sundog——that were responsible for opening the land to the public. The Conservationists allowed Green Valley to host an event on the land. Green Valley was responsible for organizing the event and bringing people onto the land. Sundog provided hot air balloon rides on land that was owned by the Conservationists and occupied by Green Valley. Immunizing Sundog would have no effect on whether the public had access to private land, because Sundog is not responsible for opening the land to the public.

¶38 We also find Linville instructive in determining the logical stopping point for immunity. In Linville, the court analyzed whether granting immunity to city paramedics could create limitless immunity for all medical services provided for injuries sustained while recreating. 184 Wis. 2d 705. "Such services could conceivably take place days or even weeks after the recreational activity, at facilities far removed from the site of recreation, and by persons in no way connected to the

14

land on which the accident occurred." Id. at 720. "Such a result is absurd, leaves immunity limitless, and therefore could not have been intended by the legislature." Id.

¶39 Wis. Stat. § 895.52 "was not enacted to provide indiscriminate immunity for landowners without regard to possible consequences." Id. at 719 (quoting Ervin v. City of Kenosha, 159 Wis. 2d 464, 477, 464 N.W.2d 654 (1991)). Extending immunity to Sundog could lead to limitless immunity. Sundog is not the owner of the land. It is not occupying the land as an event organizer and is therefore not responsible for opening up the land to the public. If Sundog——who has no connection to the land——is granted immunity, there will be no stopping point to recreational immunity.

¶40 For example, what if Roberts brought a claim against the manufacturer of the hot air balloon that injured her? What if the tether that broke loose was due to a fault in the manufacture of the balloon, rather than the wind? Should the balloon manufacturer, which had no connection to opening the land to the public, be immunized because ballooning is a recreational activity?

¶41 Granting immunity to third parties that are not responsible for opening up the land to the public is unsupported by our prior case law. In addition, it would create an absurd result with no logical stopping point that does nothing to further the legislative purpose of the statute. Accordingly, we conclude that Sundog is not entitled to recreational immunity

15

under Wis. Stat. § 895.52 because it was not an "occupier" of the land.

                                    B.

¶42 Next, Sundog argues that it is entitled to immunity not only as an "occupier" of real property, but also as an owner of "property" because the hot air balloon is a structure pursuant to Wis. Stat. § 895.52(1)(f). "Property" means real property and buildings, structures and improvements thereon. Wis. Stat. § 895.52(1)(f).

¶43 The term "structure" is not defined in Wis. Stat. § 895.52, and is therefore given its common and ordinary meaning. Peterson v. Midwest Sec. Ins. Co., 2001 WI 131, ¶16, 248 Wis. 2d 567, 636 N.W.2d 727. A "structure" is "something constructed," or "something made up of a number of parts that are held or put together in a particular way." Id. (citing American Heritage Dictionary of the English Language, 1782 (3d ed. 1992)). "Structure" is also defined as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner." Id. (citing Black's Law Dictionary, 1424 (6th ed. 1991)).

¶44 Sundog relies on Peterson, in which this court held that the owner of a tree stand was entitled to immunity as the owner of a "structure" on real property. Id., ¶4. Peterson adopted the court of appeals' decision in Doane. Peterson, 248 Wis. 2d 567, ¶20. The Doane court identified three categories of property that qualify owners for immunity: (1) real property; (2) buildings, structures and improvements thereon; and (3)

16

waters of the state. Doane, 216 Wis. 2d at 352. Sundog argues that like the tree stand in Peterson, the hot air balloon is a structure because it was constructed or put together in a particular way and made up of parts joined together.

¶45 Although it may have been made up of parts joined together, the hot air balloon ride was not constructed on real property. In Peterson, the tree stand was permanent and built or constructed on the real property. See Peterson, 248 Wis. 2d 567, ¶¶5-7. The hot air balloon in this case was transient and designed to be moved at the end of the day. It was also not designed to remain in one place. The balloon was tethered to two trees and a pick-up truck because of the manner in which Sundog was using it on the day of the event. Thus, we conclude that the hot air balloon is not a structure as that term is applied in Wis. Stat. § 895.52(1)(f).

¶46 Accordingly, we conclude that Sundog is not entitled to recreational immunity under Wis. Stat. § 895.52 because it is not an owner under the statute. Sundog was not an "occupier" of the land and the hot air balloon was not "property" because it is not a "structure."

IV.

¶47 Having determined that Sundog is not entitled to immunity under Wis. Stat. § 895.52, we must address whether Roberts' claims are barred by Sundog's exculpatory release. Sundog argues that the waiver of liability form that Roberts signed is valid under Wisconsin law.

¶48 Wisconsin case law does not favor exculpatory agreements. See, e.g., Atkins v. Swimwest Family Fitness Center, 2005 WI 4, ¶12, 277 Wis. 2d 303, 691 N.W.2d 334. "While this court has not held that an exculpatory clause is invalid per se, we have held that such a provision must be construed strictly against the party seeking to rely on it." Id., ¶12 (citing Yauger v. Skiing Enters., Inc., 206 Wis. 2d 76, 81, 557 N.W.2d 60 (1996); Merten v. Nathan, 108 Wis. 2d 205, 210-11, 321 N.W.2d 173 (1982)).

¶49 Our analysis of an exculpatory contract begins with examining the facts and circumstances of the agreement to determine if it covers the activity at issue. Atkins, 277 Wis. 2d 303, ¶13 (citing Arnold v. Shawano County Agric. Soc'y, 111 Wis. 2d 203, 211, 330 N.W.2d 773 (1983), overruled on other grounds). If the contract covers the activity, we proceed to a public policy analysis, "which remains the 'germane analysis' for exculpatory clauses." Id., ¶13 (citing Yauger, 206 Wis. 2d at 86). "We generally define public policy as 'that principle of law under which freedom of contract or private dealings is restricted by law for the good of the community.'" Id., ¶14 (quoting Merten, 108 Wis. 2d at 213).

¶50 This court has found an exculpatory agreement to be invalid if it contains misrepresentations, if it too broadly defines the location and actions covered, or if it is ambiguous and uncertain. See, e.g., Merten, 108 Wis. 2d at 214-15; see also Arnold, 111 Wis. 2d at 211-13; Dobratz, 161 Wis. 2d at 526.

18

Our prior decisions have also set forth the factors to apply in analyzing whether a contract is void as a matter of law.

¶51 In Richards, 181 Wis. 2d 1007, the plaintiff was injured while accompanying her husband on a trip. The waiver in Richards was both an application for permission to be a passenger and a release of all claims against the trucking company. Id. at 1012. Richards held that the contract was void as against public policy because: (1) the contract served two purposes which were not clearly identified or distinguished; (2) the release was extremely broad and all-inclusive; and (3) the release was in a standardized agreement printed on the Company's form, offering little or no opportunity for negotiation or free and voluntary bargaining. Id. at 1011.

¶52 In Yauger, 206 Wis. 2d 76, an 11-year old skier was killed when she struck a concrete ski lift tower pylon. Prior to the ski season, her father signed an "application" for a season family lift ticket. Id. at 79. The application stated: "I agree that [] [t]here are certain inherent risks in skiing and that we agree to hold [the ski resort] harmless on account of any injury incurred . . . on the [ski resort] premises." Id. at 79. "Inherent risks" and "premises" were not defined. Id. at 84-85.

¶53 The Yauger court unanimously concluded that the agreement was void as against public policy because: (1) it failed to clearly, unambiguously, and unmistakably explain to the signatory that he was accepting the risk of Hidden Valley's negligence; and (2) the form when considered in its entirety

19

failed to alert the signer to the nature and significance of the document being signed. Id. at 78.

¶54 More recently in Atkins, this court considered the enforceability of an exculpatory agreement after a swimmer drowned in a lap pool at a fitness center. Atkins, 277 Wis. 2d 303. As a condition of being allowed to use the center, the swimmer had to complete a guest registration and waiver release statement form. Id., ¶3. The form was preprinted on a five and one-half inch square card, and the entire card was printed in capital letters of the same size, font, and color. Id., ¶4.

¶55 Atkins held that the waiver was invalid, noting that "Wisconsin case law does not favor [exculpatory] agreements," and "such a provision must be construed strictly against the party seeking to rely on it." Id., ¶12. The Atkins court adopted a combination of the Yauger and Richards factors in its decision: (1) the waiver was overly broad and all-inclusive; (2) the form served two functions and did not provide the signer adequate notification of the waiver's nature and significance; and (3) there was little or no opportunity to bargain or negotiate in regard to the exculpatory language in question. Id., ¶18; see also Alexander T. Pendleton, Enforceable Exculpatory Agreements: Do They Still Exist?, 78 Wis. Law. 16, 46 (Aug. 2005).

¶56 Turning to the release at issue in this case, it is undisputed that Sundog required Roberts to sign a waiver prior to riding in the hot air balloon. Roberts signed the waiver while she was waiting in line for the ride, but never returned

it. The signed waiver was found on the event grounds after she was injured by the hot air balloon.

¶57 Sundog argues that Roberts read the release, understood its importance, and understood she was waiving her right to bring a negligence claim. It also asserts that Roberts had the opportunity to bargain and ask questions, but failed to do so. Roberts counters that she never accepted the liability waiver form because she never returned it to Sundog. She also argues that the waiver is void as a matter of law because it violates public policy.

¶58 We agree with Roberts that the waiver of liability form is unenforceable as a matter of law because it fails to satisfy the factors set forth in our prior case law. Because the waiver is void as a matter of law, we need not address the question of whether Roberts accepted the agreement.[7]

¶59 First, Sundog's exculpatory waiver is overly broad and all-inclusive. As our prior cases have explained, an agreement cannot be so broad "that it would absolve [the defendant] from any injury to the [plaintiff] for any reason." Richards, 181 Wis. 2d at 1015 (citing College Mobile Home Park & Sales v. Hoffman, 72 Wis. 2d 514, 521-22, 241 N.W.2d 174 (1976)).

¶60 The waiver in this case would absolve Sundog for any activity for any reason, known or unknown:

> I expressly, willing, and voluntarily assume full
> responsibility for all risks of any and every kind

---

[7] Additionally, we do not address whether the question of Roberts' "acceptance" presents a question of fact or law here.

21

> involved with or arising from my participation in hot air balloon activities with Company whether during flight preparation, take-off, flight, landing, travel to or from the take-off or landing areas, or otherwise.
>
> Without limiting the generality of the foregoing, I hereby irrevocably release Company, its employees, agents, representatives, contractors, subcontractors, successors, heirs, assigns, affiliates, and legal representatives (the "Released Parties") from, and hold them harmless for, all claims, rights, demands or causes of action whether known or unknown, suspected or unsuspected, arising out of the ballooning activities...

Not only is the waiver overly broad, it is not clear whether waiting in line for the ride is something Roberts would have contemplated as being covered by the waiver, especially because she was not required to return the waiver before she got into the line.

¶61 Second, the release was a standard agreement printed on the company's form, offering Roberts no opportunity to bargain or negotiate in regard to the exculpatory language in question. See Richards, 181 Wis. 2d at 1011. "Freedom of contract is premised on a bargain freely and voluntarily made through a bargaining process that has integrity." Id. at 1016.

¶62 Sundog concedes that the waiver of liability was a standard form. In order to ride the balloon, Roberts was told she would have to sign "this document." Sundog did not discuss the content of the waiver or any of the risk associated with ballooning activities or watching others ride with Roberts. There was also no pre-flight meeting as referenced in the agreement. Roberts was not asked if she had any complaints or

22

concerns with the waiver and she did not have an opportunity to negotiate the terms of the waiver.

¶63  Thus, the liability waiver form is void as a matter of law.  It is overly broad, printed on a standard form, and Sundog did not provide Roberts with an opportunity to bargain over the terms of the contract.  As our prior case law demands, we will not uphold a waiver of liability that violates public policy.

## V.

¶64  In sum, we conclude that Sundog is not entitled to recreational immunity under Wis. Stat. § 895.52 because it is not an owner under the statute.  Sundog was not an "occupier" of the land and the hot air balloon was not "property" because it was not a "structure."

¶65 Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings.

*By the Court.* – The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings.

¶66 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join the opinion of the court because I agree that Sundog is not entitled to recreational immunity under Wis. Stat. § 895.52 (2013-14) and that Sundog's waiver of liability form is unenforceable. The court appropriately does not reach the questions of whether Roberts' injuries arose from a condition or maintenance of the land and, if not, whether Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), and Kosky v. International Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997), preclude the attachment of immunity to Sundog under § 895.52, see majority op., ¶4 n.4, because resolution of that issue is not necessary to the disposition of this case.

¶67 I feel compelled to comment briefly on the condition-or-maintenance issue so that the position set forth by the court of appeals below is not read as the only possible view of the matter. Simply stated, while the policy behind the statute is to encourage landowners to open their land to the public, the recreational immunity statute does not cloak a negligent actor with immunity no matter what they do.

¶68 Unlike the court of appeals below, I conclude that there is a patent "division of functions" at play in this case. Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., ¶20 (Wis. Ct. App. Mar. 26, 2015). Put differently, Sundog's "immunity for its functions as [occupier] of recreational land cannot shelter its liability for negligently

1

performing another function," namely the operation of its hot air balloon business. Linville v. City of Janesville, 184 Wis. 2d 705, 711 516 N.W.2d 427 (1994). This conclusion is consistent with Linville, Kosky, and the recreational immunity statute.

¶69 Wisconsin Stat. § 895.52(2)(b) states in part, "[N]o owner . . . is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property . . . ." Despite the broad nature of this language, we concluded in Linville that an "owner" under the statute might sometimes function in a capacity unrelated to its ownership of land, and that the owner should not be immunized against claims that the owner engaged in negligent conduct when operating in that capacity. Linville, 184 Wis. 2d at 720-21. Hence, a municipal owner of a pond in which a four-year-old boy drowned despite the efforts of paramedics employed by the owner was immune under § 895.52 from claims that its pond was negligently maintained, but not immune from claims that it negligently performed in its capacity as provider of paramedic services. Id.

¶70 This conclusion followed from our recognition that "[t]he policy behind the statute is to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a property owner's alleged negligence." Id. at 715. We reasoned that Wis. Stat. § 895.52 "was not enacted to provide indiscriminate immunity for landowners without regard to possible consequences"

2

and that "[e]xtending immunity to landowners for negligently performing in a capacity unrelated to the land . . . will not contribute to a landowner's decision to open the land for public use." Id. at 719 (citation omitted).

¶71 The court of appeals applied Linville just a few years later when an individual who suffered injuries assisting in the detonation of fireworks for a display sued the owner of land on which the fireworks display occurred, alleging that the owner had negligently managed the display. Kosky v. Int'l Ass'n of Lions Clubs, 210 Wis. 2d 463, 468-70, 476-77, 565 N.W.2d 260 (Ct. App. 1997). The court of appeals concluded, relying on Linville, that the landowner——which was an "occupie[r]" under the recreational immunity statute——was not immune because the allegedly negligent activities of the owner and its employees related to the detonation of fireworks, not "the condition or maintenance of the land" which it owned. Id. at 468, 470 n.3, 476-77. "[R]ecreational immunity," the court determined, "does not attach to the landowner when an act of the landowner's officer, employee or agent that is unrelated to the condition or maintenance of the land causes injury to a recreational land user." Id. at 475.

¶72 In the instant case, Roberts cites Linville and Kosky and argues that Sundog's alleged negligence——the use of an "improper tethering system" and the decision "to proceed with a tethered balloon event in the face of a known storm/gust front"——did not relate to a condition of the land. Therefore, Roberts argues, immunity does not attach. In dismissing this argument,

3

the court of appeals declared: "Roberts identifies no . . . division of functions here.  Rather, as stated above, Roberts sued Sundog as owner of property on which Patti Roberts was engaging in a recreational activity."  Roberts, unpublished slip op., ¶20.

¶73 This conclusion is perplexing, because there is a clear potential division of functions in this case: Sundog the property owner (occupier) and Sundog the hot air balloon company owner.[1]  The approach taken by the court of appeals below leads to the "indiscriminate immunity" against which we warned in Linville, upsetting the balance struck by the Legislature in both ensuring the protection of the public and incentivizing landowners to allow access to their land.  Linville, 184 Wis. 2d at 719; see Ervin v. City of Kenosha, 159 Wis. 2d 464, 478, 464 N.W.2d 654 (1991).

¶74 Wisconsin Stat. § 895.52 protects property owners who open their land to the public, but it does not necessarily provide a shield to business owners who are negligent in the operation of their business.  See § 895.52(1)(d)1. (defining "[o]wner" to mean, inter alia, "[a] person . . . that owns, leases or occupies property" (emphasis added)).  Indeed, it is the partial purpose of § 895.52's sister statute, § 895.525 ("Participation in recreational activities; restrictions on civil liability, assumption of risk"), "to help assure the

---

[1] The division of functions is only "potential" because, as explained, Sundog is not actually an owner under Wis. Stat. § 895.52(1)(d).  See majority op. ¶4.

4

continued availability in this state of <u>enterprises that offer recreational activities to the public</u>." Wis. Stat. § 895.525(1) (emphasis added).  These enterprises are nowhere mentioned in § 895.52, which does not pertain to them.

¶75 The <u>Linville</u> and <u>Kosky</u> courts recognized that Wis. Stat. § 895.52 grants recreational immunity, not sovereign immunity, and that the protections offered by § 895.52 end when a landowner performs negligently in a capacity unrelated to the individual's ownership of the land.  These considerations govern here.

¶76 A hypothetical helps illustrate.  One of the many pleasant diversions included in Wis. Stat. § 895.52(1)(g)'s definition of "[r]ecreational activity" is "rock-climbing." § 895.52(1)(g).  If a landowner in northern Wisconsin owns a piece of property with a cliff on it and wishes, out of the goodness of her heart, to allow the local weekend rock-climbers' club to use the cliff for practice, the legislature has determined via § 895.52 that she should not be penalized if, for example, an unfortunate climber plummets to his death from the cliff.  This seems reasonable enough, as a grant of such immunity encourages the landowner to open the land to climbers without fear of negative repercussions. <u>See</u> <u>Linville</u>, 184 Wis. 2d at 715.  On the other hand, imagine that the landowner decides to capitalize on her property's attraction and opens an outdoor rock-climbing business, providing training, ropes, and safety equipment to climbers.  Under the interpretation of the statute espoused by the court of appeals, if the landowner

5

should decide to continue allowing the unsuspecting local club to climb for free, or opens up her land for a charity event, she can operate her business negligently with respect to the club or to the eventgoers——snapping ropes, cracked helmets, improper training——without fear.

¶77 This hypothetical is not much different than the current case: in both instances there is a potential landowner/occupier who provides access to land but who also allegedly negligently provides recreational activity services on that land.

¶78 The scope of immunity provided by this reading of Wis. Stat. § 895.52 is potentially enormous, but there is a more reasonable interpretation: the one applied in <u>Linville</u> and <u>Kosky</u>. Assuming that Sundog could be characterized as an "owner" under § 895.52(1)(d)——and the opinion of the court correctly concludes that it can not, <u>see</u> majority op. ¶4——then it is immune insofar as it is sued in its capacity as "owner" of the patch of land on which it was offering free balloon rides. It is not immune, however, insofar as it is sued in its capacity as owner of a hot air balloon company. This is the division of functions that the court of appeals found lacking. Just as holding the cliff-owner in the hypothetical liable for snapping ropes, cracked helmets, and improper training will not discourage the owner from allowing climbers to use the cliff <u>without</u> the involvement of her business, failing to grant Sundog immunity as a business operator will not discourage it from

6

"opening" its land for recreational activities (that is, activities not conducted by Sundog).

¶79 In fairness, application of the statute to facts such as these produces some cognitive dissonance, because, had Sundog been found to be an "occupie[r]," it would not really be a property owner in the sense that most people are used to thinking about that phrase. Sundog would only be a property owner under the recreational immunity statute because it "occupie[d]" the Conservationists' land, and it was only occupying the Conservationists' land because it wanted to offer free balloon rides. But it must be remembered that we are essentially thinking of two Sundogs for purposes of the Linville/Kosky analysis: business owner Sundog, which provides hot air balloon rides, and occupier Sundog, which stands on the sidelines and watches the eventgoers happily use "its" property free of charge.

¶80 Importantly, and contrary to what Roberts seems to argue, this interpretation should not be misconstrued to mean that immunity under Wis. Stat. § 895.52 extends only to injuries associated with the physical land itself, e.g., injuries from holes in the ground. Wisconsin Stat. § 895.52(2)(b) provides immunity to owners for any "death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property." § 895.52(2)(b) (emphases added). But the fact remains that immunity is extended to the "owner," i.e. the property owner—not to, for instance, a business operator also on that property. Thus, if someone is

7

accidentally shot while hunting on a landowner's property, the landowner is seemingly immune from suit against her as landowner (even though the bullet is not "associated" with a condition of the land). But if the landowner also operates a hunting supply shop on the land, opens the land for a charity event, and proceeds to provide negligently-maintained firearms to participants, it might be that recreational immunity would not attach to the entity in its capacity as a business owner.

¶81 Ultimately, because Sundog is not an "owner" under Wis. Stat. § 895.52(1)(d), the question of whether it operated in two distinct capacities at the charity event is not relevant to the outcome of this case. However, the court of appeals should not be the only word on this important question, which is wisely left unanswered by the opinion of the court.[2]

---

[2] Justice Prosser's partial concurrence criticizes my post-Linville analysis through use of a pre-Linville case, Ervin v. City of Kenosha, 159 Wis. 2d 464, 464 N.W.2d 654 (1991) (and, even more daringly, through use of a pre-1983 Wis. Act 418 case, Wirth v. Ehly, 93 Wis. 2d 433, 287 N.W.2d 140 (1980)). Concurrence, ¶¶125, 127. The partial concurrence notes that the author of Linville was also the sole dissenter from Ervin. Concurrence, ¶128. If the question is whether Linville eroded any of the principles in Ervin, one would think this fact hinders rather than helps the partial concurrence's case. Regardless, there is no need to attempt to divine the meaning of Linville's authorship, because my analysis is not "squarely at odds" with Ervin. Concurrence, ¶125.

(continued)

8

This is because the City of Kenosha's ("the City") actions in Ervin were arguably performed in its capacity as property owner rather than, for instance, in its capacity as a business owner. The facts underlying that case took place at a beach owned by the City of Kenosha and "staffed by four lifeguards employed and trained by the City." Ervin, 159 Wis. 2d at 469-70. In the summer of 1987, two minors drowned in the water off the beach. Id. at 468-69. The City was sued, among other things, for the alleged negligence of its lifeguards and for its own allegedly negligent hiring and failure to train them. Id. at 471-72. This court held that the City was immune from such allegations under the recreational immunity statute. Id. at 469.

Returning to my earlier hypothetical, Ervin is analogous to a circumstance in which a cliff-owner (or somebody hired by the cliff-owner) stands by and watches while a climber using the cliff for free plummets to her death. Nothing in Ervin indicates that the City was stepping outside of its role as landowner (indeed, it had not formally interviewed its lifeguards or even provided its lifeguards with "skills testing [or] lifeguard, first-aid or rescue training"). Id. at 471. Put differently, although the Ervin court seemingly rejected an "active/passive negligence distinction" with respect to landowners' negligence under the recreational immunity statute, the court said nothing about the operation of the statute when landowners act in a non-proprietary capacity. See, e.g., id., at 476-77 ("If liability were imposed on landowners for negligence in failing to provide adequate safety measures, it would encourage landowners to provide no safety measures." (emphases added)). That came later, in Linville. As opposed to Ervin, wherein the City had "gratuitously" provided a few "lifeguards" without "skills testing [or] lifeguard, first-aid or rescue training" to stand post on the single parcel of property at issue, id., 471-77, the City of Janesville operated a team of paramedics which provided city-wide services and which had little to do with the ownership of the municipal pond in particular. See State v. Linville, 184 Wis. 2d 705, 720-21, 516 N.W.2d 427.

While I understand the partial concurrence's reading of Linville and find it to be a reasonable one in isolation, it is at odds with a principal expositor of Linville, Kosky v. International Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997). Justice Prosser would need to overrule a substantial amount of law to arrive at his interpretation of the recreational immunity statute.

¶82  For the foregoing reasons, I respectfully concur.

¶83 DAVID T. PROSSER, J. *(concurring in part; dissenting in part).* This case involves an unfortunate accident that occurred at a charity event in Beaver Dam on July 30, 2011. I agree with the majority opinion that "Sundog's waiver of liability form violates public policy and is unenforceable as a matter of law." Majority op., ¶4. However, I also agree with the dissenting opinion of Justice Rebecca G. Bradley that "Sundog meets the statutory requirements to obtain recreational immunity because: (1) it falls within the definition of 'owner,' which includes 'a person . . . that . . . occupies property;' and (2) Patti Roberts engaged in a recreational activity on the property occupied by Sundog." Dissent, ¶132. Consequently, I join the dissenting opinion of Justice Rebecca Bradley except for footnote 4.

¶84 My purpose in writing is to reinforce the inexorable logic of Justice Bradley's dissent and respond to the concurrence of Justice Ziegler.

¶85 Wisconsin Stat. § 895.52 reads in part as follows:

> (2) NO DUTY; IMMUNITY FROM LIABILITY. (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
>
> . . . .
>
> 3. A duty to give warning of an unsafe condition, use or activity on the property.
>
> (b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for . . . any injury to . . . a person engaging in a recreational activity on the owner's property . . . .

¶86 Critical to the interpretation of this statute is the definition of "owner."

"Owner" means either of the following:

1. A person, including a governmental body or nonprofit organization, that owns, leases or occupies property.

2. A governmental body or nonprofit organization that has a recreational agreement with another owner.

Wis. Stat. § 895.52(1)(d).

¶87 In this case, we should analyze three different entities: (1) Beaver Dam Conservationists, LLC; (2) Green Valley Enterprises; and (3) Sundog Ballooning, LLC (and its owners, Kerry M. Hanson and Jodi L. Hanson) (Sundog).

¶88 "Beaver Dam Conservationists, LLC . . . owned the shooting range where the charity event was held." Majority op., ¶5. The shooting club was thus an owner.

¶89 The shooting club donated use of its property to Green Valley Enterprises, a charitable organization, which opened the property free to the public as part of a charitable fundraiser. Of course, Green Valley could not have opened up the property to the public if Beaver Dam Conservationists had not "opened up" the property for Green Valley's charitable event.

¶90 Green Valley was an "owner" under Wis. Stat. § 895.52(1)(d)1. because it occupied the property with the permission of an owner. In addition, it was an owner under (d)2. if it signed "a recreational agreement" with Beaver Dam

2

Conservationists.[1] Whether Green Valley actually signed a "recreational agreement" is not known.

¶91 The principal issue in this court is whether Sundog also is an "owner" by virtue of occupying the property.

¶92 This was not the principal issue in the circuit court. In fact, this was not an issue at all in the circuit court. In its motion for summary judgment, Sundog explained at length that it was an "owner" under the statute because it occupied the property.

¶93 The plaintiffs did not dispute this contention. The plaintiffs instead took a different position:

> The liability of the Defendant in this case has absolutely nothing to do with the condition of the land, any structures upon it, or use of the land itself by the Plaintiffs or the Defendant.
>
> . . . .
>
> Negligent acts or decisions not directed at the condition of the land are not entitled to immunity.

¶94 The Dodge County Circuit Court, Joseph G. Sciascia, Judge, wrote the following: "The [plaintiffs] do not dispute that the plaintiff was on the property for a recreational purpose. The plaintiff raises the issue of whether or not the statute applies in this case because the injury was caused by an

---

[1] "Recreational agreement" is defined in Wis. Stat. § 895.52(1)(h) to mean "a written authorization granted by an owner to a governmental body or nonprofit organization permitting public access to all or a specific part of the owner's property for any recreational activity."

3

act unrelated to the condition or maintenance of the land . . . ."

¶95 Whether Sundog occupied the property was not an issue in the court of appeals either. The court's opinion stated:

> Roberts does not contest that Sundog was occupying, and therefore was an "owner" of, "property" on which Patti Roberts was engaging in "recreational activity." See Wis. Stat. § 895.52(1)(d), (f), (g). Roberts also does not dispute that "the activity giving rise to [Patti Roberts'] injury was a 'recreational activity' as defined by the statute," that is, ballooning.

Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., ¶16 (Wis. Ct. App. Mar. 26, 2015) (alteration in original).

¶96 The reason why "occupies" is the principal issue in this court is because this court made it the principal issue by asking the parties to brief it. The court's order granting review stated in part:

> IT IS FURTHER ORDERED that the parties' briefs shall address the following additional issue:
>
> Whether the defendants/respondents Sundog Ballooning, LLC, Kerry M. Hanson, and Jodi L. Hanson, were "occupiers" of the property in question for purposes of the recreational immunity statute at the time of the accident in question. See Wis. Stat. § 895.52(1)(d); see also Doane v. Helenville Mut. Ins. Co., 216 Wis. 2d 345, 575 N.W.2d 734 (Ct. App. 1998).

¶97 This court has broad authority to ask that additional issues be briefed, but the court should be careful not to fault a party for failing to supply complete evidence on an issue that was not contested, or chide a party for not arguing or briefing an issue that was not necessary because of the party's success

4

in circuit court on a more encompassing issue. See Majority op., ¶33 n.6.

¶98 As I see it, Sundog took possession of a large, wide-open space at the recreational property of Beaver Dam Conservationists at the express invitation of Green Valley Enterprises. Its balloon was tethered to two trees and a pickup truck that was brought into and parked on the property. The two trees and truck formed a triangle with the large balloon in the middle. The Hansons flagged off the whole area. They set up a display and a sign-up table for the balloon ride, and they designated a waiting area for people to line up for a ride. In short, the Hansons completely controlled one section of the property for their ballooning operation. They "filled up" the space. They not only "used" the space but also governed the space during the time they were authorized to be there. In sum, they occupied the property.

¶99 In Doane, the court of appeals said, "An occupant is one who has actual possession of the property, but is more transient than either a lessee or an owner with legal title." Doane, 216 Wis. 2d at 351 (citing Hall v. Turtle Lake Lions Club, 146 Wis. 2d 486, 491, 431 N.W.2d 696 (Ct. App. 1988)). This, in essence, is the rule applied in multiple cases. There can really be no dispute that Sundog satisfied the test of "occupies" under this rule.

¶100 The Doane court added, however, that "'occupancy,' in the statutory sense, signifies a degree of permanence, as opposed to the mere use of the property in question." Id.

5

(citing Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193, 1197 (7th Cir. 1987)). The Doane court later stated:

> "Occupy" is defined as "to take and hold possession." Webster's New Collegiate Dictionary 794 (8th ed. 1974). That definition could imply possession for some unstated period of time or it could be understood in a way in which time is not relevant. Therefore, reasonable persons could differ in their assessments of whether Ehle "occupied" a portion of the lake with his shanty within the meaning of the statute. However, occupy, as used in § 895.52 Stats., has been defined by this court as requiring a degree of permanence, as opposed to mere use. See Hall, 146 Wis. 2d at 491, 431 N.W.2d at 698 (citing Smith, 823 F.2d at 1197).

Id. at 354 (emphasis added).

¶101 The court of appeals reached the correct decision in Doane, but it did so, at least in part, for the wrong reason. The Hall case never discussed "a degree of permanence" because Hall never quoted that portion of the Seventh Circuit's opinion. Hall clearly sidestepped the "permanence" part of the Seventh Circuit's opinion and instead quoted language that the Seventh Circuit had quoted from the underlying District Court decision. The language quoted from the District Court's decision made absolutely no reference to "permanence." Until Doane, no Wisconsin case had ever used the phrase "degree of permanence."

¶102 The Hall case involved a Lions Club in Turtle Lake that sponsored a fair on the grounds of the Turtle Lake Village Park. The Village granted the Lions permission to use the park. The Hall court said: "[W]hen a third party such as the Lions Club produces a fair on the land of another, it 'occupies' the land within the intended definition." Hall, 146 Wis. 2d at 490.

Then the court quoted language that the Seventh Circuit had quoted from the underlying District Court decision in Smith:

> [O]ccupant include[s] persons who, while not owners or tenants, have the actual use of land.. . . . While "occupant" includes [an] owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to [occupies], the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner.

Id. at 491 (alterations in original)(quoting Smith, 823 F.2d at 1197, which had quoted Smith v. Sno Eagles Snowmobile Club, Inc., 625 F. Supp. 1579, 1582 (E.D. Wis. 1986)).

¶103 If the Doane case is controlling, it substantially changed the law in Wisconsin, disregarding prior court of appeals precedent, when it quoted from the Seventh Circuit's independent analysis in Smith, rather than language quoted from the District Court's underlying decision.

¶104 In the Seventh Circuit case, the losing party, Smith, relied on Labree v. Millville Manufacturing, Inc., 481 A.2d 286 (N.J. Super. Ct. App. Div. 1984), a New Jersey case in which a contractor was sued after excavating land as part of the construction of a highway. Smith, 823 F.2d at 1196-97. "The excavation and transfer of sand and gravel resulted in the man-made creation of a twenty acre lake in which people swam on an informal basis." Id. at 1197. David Labree later dove into the lake and hit his head, rendering him a quadriplegic. Id. The contractor, who was sued after he had left the land, claimed recreational immunity under a New Jersey statute. The New Jersey court said:

7

> We believe use of the word "occupant" in the statute signifies an intent to provide immunity for an entity with a degree of permanence in the occupancy, not merely one who is using the property, as was the case with Gaskill. [Gaskill] "occupied" the property not really as one in occupancy but rather as one removing dirt and gravel from it.

Id. (alterations omitted)(quoting Labree, 481 A.2d at 291).

¶105 The Seventh Circuit opinion in Smith borrowed the "degree of permanence" language from the New Jersey court and used it against the losing party. But it is very doubtful that the Seventh Circuit intended to create a "degree of permanence" test for "occupants." Indeed, the Seventh Circuit favorably referred to the language from the underlying District Court opinion, quoted in Hall, when explaining that if the court "were to circumscribe and interpret 'occupant' as one in actual possession or exclusive control the term would be indistinguishable from owner." Smith, 823 F.2d at 1198. Our court of appeals should not have embraced the phrase "degree of permanence" as established Wisconsin law to bootstrap its decision in Doane.

¶106 This court cannot adopt the "permanence" test from the Seventh Circuit decision without overruling Hall and numerous other cases, and also effectively ruling that Green Valley Enterprises did not "occupy" the property. If a "permanence" test disqualifies Sundog, it would disqualify Green Valley Enterprises as well because Green Valley did not own or lease the property——it occupied the property. Green Valley's few extra hours of occupancy at the shooting range cannot

8

realistically be viewed as being more "permanent" than Sundog's occupancy.

¶107 The majority's decision to disqualify Sundog from any status as an "owner" and send this case back for trial does not end the immunity issue. If Green Valley is still considered an occupant, we must anticipate that Sundog will assert that it was Green Valley's "agent" under Wis. Stat. § 895.52(2)(a) and (b). There is no definition of "agent" in the recreational immunity statute, meaning that the circuit court may resort to a dictionary. "Agent" is defined as (1) one that acts or has the power or authority to act, or (2) one empowered to act for or represent another. American Heritage Dictionary of the English Language 33 (3d ed. 1992).

¶108 Kerry Hanson explained in his deposition that he and his wife lived in Rhinelander but had family ties to Beaver Dam. In fact, his sister, Kristin Hanson, was manager for agency development for Green Valley Enterprises. Kerry Hanson testified as follows:

> Q. How was it that it came about that you were going to be involved in this event in the first place?
>
> . . . .
>
> A. --the head of the Green Valley Enterprises, a business that services special needs people, was actually in the neighborhood, saw my balloon tethered. He employs my sister, who is a marketing director for Green Valley Enterprises. He saw it and said, wow, what a cool thing; maybe we could use that at our fundraiser to increase awareness, and I believe that began the process.
>
> Q. And eventually it was agreed that you would do that.

9

Correct?

A.    Right.

Q.    And it's my understanding that you were donating your services that day?

A.    Right.

¶109 In other depositions, witnesses testified that Sundog's balloon rides were advertised as an attraction for Green Valley Enterprises' fundraising event.

¶110 Under the circumstances, it would be rather difficult to conclude that Sundog was not an "agent" of Green Valley Enterprises if Green Valley was an "owner."

¶111 The "agent" of an "owner" is immune under the statute. However, the majority's conceptual dilemma is that any "agent" in this situation is likely to be "a third party not responsible for opening up the land to the public," Majority op., ¶33, which the majority now deems essential to qualifying for immunity: "Here . . . defining Sundog as an 'occupier' would not further the policy underlying the statute because the Conservationists' property was already open for public recreational purposes." Id., ¶35.

¶112 The majority opinion adds, "Immunizing Sundog would have no effect on whether the public had access to private land, because Sundog is not responsible for opening the land to the public." Id., ¶37.

¶113 This analysis would appear to deny immunity to any "officer, employee or agent" who did not "open up the land" to the public.

¶114 This analysis also is deficient because it ignores the fact that people often come to a property because they have been attracted by the promise of recreational activities there. Example: the Roberts family came to the shooting range, in part, because they heard there would be balloon rides. If organizations and people providing bona fide recreational activities are stripped of recreational immunity because they did not "open up the land to the public," they will have to rethink whether they are willing to participate in such activities.

¶115 In sum, the majority opinion seriously misinterprets the meaning of "owner" in the statute.

¶116 As noted above, the Robertses contended at trial that recreational immunity must be linked to a "condition of the land, any structures upon it, or use of the land itself." See supra, ¶93. Justice Ziegler's concurrence champions this proposition by relying on Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), and Kosky v. International Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997).

¶117 Linville is the tragic case in which a man took a mother and her four-year-old son to a city-owned pond in Janesville. The man intended to take the boy fishing, and he was checking out fishing spots for the next day. Through a series of bizarre events, the man drove his van too close to the water, got stuck in mud, then inadvertently drove the van into the water where he and the boy drowned. Plaintiffs sued the

11

city claiming that the city's paramedics were negligent in their rescue of the boy and negligent in providing medical services to the boy. The city defended with a claim of recreational immunity under Wis. Stat. § 895.52.

¶118 This court first struggled with the question of whether the three people at the pond were engaging in a "recreational activity" at the time two of them died. The court said they were. But that did not settle the question of whether the city could claim recreational immunity for the alleged negligence of its paramedics in the rescue effort.

¶119 The court determined that the city could not assert recreational immunity for the alleged negligence of its paramedics because it was virtually coincidental that the alleged negligence of the paramedics occurred at a city-owned recreational site and came after a mishap in recreational activity for which the city bore no responsibility.

¶120 The court said: "The City's immunity for its functions as owner of recreational land cannot shelter its liability for negligently performing another function." Linville, 184 Wis. 2d at 711.

¶121 In discussing this conclusion, the court observed: "We must determine whether this statute immunizes the paramedics and the City simply because the paramedics are employees of the City which owns the Pond." Id. at 718.

> [G]ranting immunity to the landowner when the landowner and the employer of the negligent employee are functioning in two different capacities and are therefore not the same entity in the eyes of the law would produce absurd consequences. . . . To interpret

12

the language of sec. 895.52(2)(b), Stats., to include injury resulting from negligent rescue and treatment by the paramedics in this case, would produce absurd consequences.

Id. at 719. The court continued: "The paramedics provide emergency medical treatment in every part of the City, no matter the situs. Thus the City's rescue attempts and medical treatment are separate and apart from the City's ownership of or activities as owner of recreational land." Id. at 721.

¶122 The Linville court bolstered its analysis by repeated reference to the purported purpose of the recreational immunity statute, e.g., property owners should be encouraged to open up land to the public. In my view, this discussion of policy was not necessary to a limitation of immunity and is not relevant when dealing with public land that is intended for use by the public.[2]

---

[2] Kosky v. International Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997), also is cited in Justice Ziegler's concurrence. This case requires close examination.

Kosky involved a man whose hands were badly injured as he was participating in a three-person team detonating "explosive fireworks" at the annual Fourth of July fireworks celebration in Land O'Lakes, Wisconsin. Kosky sued the Land O'Lakes Lions Club and other sponsors of the show, as well as several co-workers. The defendants claimed recreational immunity under Wis. Stat. § 895.52.

(continued)

13

In his brief to the court of appeals, the plaintiff asserted that the "extra-hazardous activity of detonating explosive fireworks" was not a "recreational activity" protected under Wis. Stat. § 895.52. (capitalization and title case omitted.) He also asserted that although he had ties to the area, he came from Niles, Illinois, at the specific request of the Land O'Lakes Lions Club "to perform work tasks with a team of people detonating explosive fireworks." He declared that he personally was not engaging in recreational activity because he was working, not watching the fireworks.

The court of appeals rejected Kosky's argument that the detonation of fireworks could not be a recreational activity because it is an inherently dangerous, extra-hazardous activity. Kosky, 210 Wis. 2d at 474. On the other hand, the court was not willing to say that the detonation of fireworks was a recreational activity in the circumstances presented. Instead, the court concluded that "recreational immunity does not attach to the landowner when an act of the landowner's officer, employee or agent that is unrelated to the condition or maintenance of the land causes injury to a recreational land user." Id. at 475.

The Kosky court quoted from Linville: "Extending immunity to landowners for negligently performing in a capacity unrelated to the land or to their employees whose employment activities have nothing to do with the land will not contribute to a landowner's decision to open the land for public use." Id. at 476 (quoting Linville, 184 Wis. 2d at 719).

To support this conclusion, Linville cited Ervin v. City of Kenosha, 159 Wis. 2d 464, 472-76, 464 N.W.2d 654 (1991), for the following proposition: "The legislature, in sec. 895.52, Stats., granted immunity to landowners with respect to the condition of the land and to the landowners' (or its employees') actions with respect to the land." Linville, 184 Wis. 2d at 718.

As will be seen, this statement is not an accurate description of Ervin. Moreover, it does not take into account that lessees and occupiers and persons with a recreational agreement cannot "open the land" until the actual landowner puts them in a position to open the land. It also fails to acknowledge that public land is normally open to the public already.

14

¶123 Justice Ziegler's concurrence builds on Linville and would state the law as follows:

(1)  While the policy of the recreational immunity statute encourages landowners to open their land to the public, the recreational immunity statute does not cloak negligent actors with immunity no matter what they do.  Justice Ziegler's concurrence, ¶67.

(2)  A "person" who owns, leases, occupies, or has a "recreational agreement" to use recreational property is not sheltered from liability for "negligently performing" another function such as operating or otherwise participating in a "recreational activity," as defined in Wis. Stat. § 895.52(1)(g).  See id., ¶69.  An "owner" under the statute "might sometimes function in a capacity unrelated to its ownership of the land, and that . . . owner should not be immunized against claims that the owner engaged in negligent conduct when operating in that capacity."  Id.

¶124 Justice Ziegler writes that the "municipal owner of a pond in which a four-year-old boy drowned despite the efforts of paramedics employed by the owner was immune under § 895.52 from claims that its pond was negligently maintained, but not immune from claims that it negligently performed in its capacity as provider of paramedic services."  Id. (emphasis added).

¶125 Justice Ziegler's summary of the law is squarely at odds with the court's discussion in Ervin v. City of Kenosha, 159 Wis. 2d 464, 464 N.W.2d 654 (1991).  In that case, two

15

youths drowned at a public beach owned and operated by the City of Kenosha. The youths' parents sued the City for negligently hiring and failing to properly train and instruct lifeguards, and for the lifeguards' alleged negligent performance at the time of the drownings. This court was confronted with arguments about separating the City's ownership of the land from its operation and oversight of the beach by its lifeguards. The court concluded that "the City is immune from liability . . . for its negligence in hiring or failing to properly train the lifeguards, [and] for the lifeguards' negligent performance." Ervin, 159 Wis. 2d at 469.

¶126 The Ervin court's opinion reads in part:

> The parents argue that sec. 895.52(2), Stats., does not immunize the City from liability for the lifeguards' negligence or for its own negligent hiring and failure to train them. The parents contend that the City's conduct represented "active" negligence, and that the statute was intended to immunize only "passive" or "condition of the premises" negligence. We disagree because: (a) the plain language of the statute does not support this contention, (b) Wisconsin case law permits immunity under the recreational use statute for both active and passive negligence, and (c) legislative intent clearly supports granting immunity for both active and passive negligence.

Id. at 472.

¶127 The Ervin court also quoted approvingly from this court's decision in Wirth v. Ehly, 93 Wis. 2d 433, 287 N.W.2d 140 (1980):

> The statute does not contemplate that the land subject to public recreational use shall remain static. Since the purpose of the statute was to open land for recreational use, it would be inconsistent for the statute to provide protection only if the owner or

16

occupant does not perform any potentially negligent activities on the land.

Ervin, 159 Wis. 2d at 475 (alteration omitted) (quoting Wirth, 93 Wis. 2d at 446).

¶128 It should be noted that the only justice who dissented in Ervin was Justice William Bablitch, the author of the Linville opinion.  In his dissent, Justice Bablitch wrote:

> By placing unqualified lifeguards on a public beach, the City of Kenosha . . . created a trap for the unwary.  The presence of the lifeguards created the perception of a safe condition that was not justified.  I do not agree with the majority that the recreational use statute exempts owners of recreational property from liability when the actions of the owner create a perception of safety that does not in reality exist.  The legislature could not have intended such an absurd result.

Id. at 485 (Bablitch, J., dissenting).  In Justice Bablitch's Linville opinion, the court did not overrule Ervin.

¶129 In her concurrence, Justice Ziegler formulates a rational policy of limited recreational immunity, but that policy would require this court to overrule a number of cases including Ervin and Wirth, disregard controlling language in the statute, and clean up internal inconsistencies in her own concurring opinion.  If we were to assume the correctness of a strict separation of functions analysis, that separation would apply irrespective of whether the separation affects an owner, a lessee, an occupier, a recreational agreement holder, or an officer, employee, or agent of an owner.  Neither the concurrence nor the majority opinion has confronted the consequences of such a change in the law.

17

¶130 I would not hesitate for a moment supporting the unfortunate victim of this balloon accident if the statute provided a reasonable means to do so. I do not hesitate now to recommend that the legislature promptly review the recreational immunity statute. I respectfully dissent, however, from any notion that the court itself should rewrite the statute to reach a desirable objective.

¶131 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this opinion.

¶132 REBECCA G. BRADLEY, J. (*dissenting*).  I would affirm the court of appeals[1] and hold that Sundog[2] is immune from liability under Wisconsin's recreational immunity statute, Wis. Stat. § 895.52(2).[3]  Sundog meets the statutory requirements to obtain recreational immunity because: (1) it falls within the definition of "owner," which includes "a person . . . that . . . occupies property," and (2) Patti Roberts engaged in a recreational activity on the property occupied by Sundog.  See Wis. Stat. § 895.52(1)(d)1., (2)(b).  By actually using the land during a charity event, Sundog meets the ordinary and accepted meaning of "occupies."  This conclusion comports with the legislative purpose of recreational immunity and would not, as the majority fears, result in the limitless application of the recreational immunity statute.  As a result, I respectfully dissent from the majority opinion because a plain reading of the

---

[1] Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op. (Wis. Ct. App. March 26, 2015).

[2] Sundog refers to the Respondents: Sundog Ballooning, LLC, Kerry Hanson, Jodi Hanson, and T.H.E. Insurance Company.  See majority op., ¶2.

[3] Whether Sundog met the statutory definition of an "owner" in Wis. Stat. § 895.52(1)(d)1. was not an issue before the court of appeals.  In our order granting the petition for review, this court ordered the parties to brief and address that issue.

statute demonstrates Sundog is entitled to recreational immunity.[4]

¶133 Subject to exceptions not applicable in this case, property "owners," as defined by Wis. Stat. § 895.52(1)(d)1.-2., are immune from liability for injuries sustained as a result of

---

[4] Because Sundog is entitled to recreational immunity, I would not reach the issue of whether the waiver of liability violates public policy.

Similarly, because I conclude that recreational immunity applies to Sundog, it is unnecessary to decide whether Sundog qualifies for recreational immunity based on its argument that the hot air balloon constitutes "property" under Wis. Stat. § 895.52(1)(f). I disagree, however, with the majority's conclusion that because the hot air balloon was not "constructed on real property" it fails to meet the definition of property in the statute. See majority op., ¶45. Although the majority's structure analysis could be read to require that the structure be built or put together on site, the majority suggests that for purposes of recreational immunity, a structure must be permanently affixed to real property. This requirement is not found in the text of the recreational immunity statute, but the majority imposes the requirement based on Peterson v. Midwest Sec. Ins. Co., 2001 WI 131, ¶17, 248 Wis. 2d 567, 636 N.W.2d 727. Peterson held that a tree stand used for hunting constituted a structure within the meaning of Wis. Stat. § 895.52(1)(f). Id., ¶4. The majority asserts that unlike Sundog's hot air balloon, "the tree stand was permanent and built or constructed on the real property." Majority op., ¶45. This differentiation between a hot air balloon and a tree stand, however, should not determine whether Sundog's hot air balloon meets the common and ordinary meaning of the word "structure."

Based on the statutory language alone, Sundog's alternative argument for recreational immunity fails because Patti Roberts did not ever enter or get on the hot air balloon, which is required by the recreational immunity statute. See Wis. Stat. § 895.52(2)(a)(making recreational immunity available to owners when a person "enters the owner's property"); see also Wis. Stat. § 895.52(2)(b)(making recreational immunity available to owners when "a person engag[es] in a recreational activity on the owner's property") (emphases added).

2

recreational activities that occur on their property. See Wis. Stat. § 895.52(2). The parties dispute whether Sundog meets the statutory definition of an "owner" to qualify it for recreational immunity. Applicable here is § 895.52(1)(d)1., which defines an owner as: "A person, including a governmental body or nonprofit organization, that owns, leases or occupies property" (emphasis added).[5] There is no assertion that Sundog owns legal title to the property or that it leased the property in question. The only way that Sundog meets the statutory definition of "owner" is if Sundog "occupies [the] property." See § 895.52(1)(d)1.

¶134 Unlike "owner," the word "occupies" is not defined in the recreational immunity statute. However, the plain, ordinary, and accepted meaning of "occupies" can be readily determined by reference to the dictionary definition of an "occupant." An occupant is "[o]ne that resides in or uses a physical space." Occupant, The American Heritage Dictionary of the English Language 1218 (5th ed. 2015). This definition indicates that a person who occupies property is one who has actual use of the property.

¶135 Here, Sundog donated tethered, hot air balloon rides at a charity event sponsored by Green Valley Enterprises. To provide this recreational ballooning activity, Sundog set up the tethered hot air balloon on property legally owned by Beaver Dam

---

[5] It is not disputed that Sundog Ballooning, LLC qualifies as "a person" in the definition of "owner" found in Wis. Stat. § 895.52(1)(d)1.

Conservationists, LLC. It used both ropes and flags to designate an area surrounding the hot air balloon. These facts show that Sundog actually used the property to provide a recreational activity, ballooning, (specifically mentioned by Wis. Stat. § 895.52(1)(g)) when Patti Roberts sustained injuries. This actual use of the property meets the plain, common, and ordinary meaning of "[a] person . . . that . . . occupies property." See Wis. Stat. § 895.52(1)(d)1. Therefore, Sundog meets the definition of a statutory owner as one who occupied the property and therefore is entitled to recreational immunity.

¶136 This conclusion is consistent with the legislative purpose of the recreational immunity statute: to "limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit." 1983 Wis. Act 418, § 1. This statement of legislative purpose is often summarized as "encourag[ing] landowners to open up their land for recreational activity." Ervin v. City of Kenosha, 159 Wis. 2d 464, 477, 464 N.W.2d 654 (1991) (emphasis added); see majority op., ¶28. The purpose of the recreational immunity statute, however, is much broader as evidenced by the legislature's decision to include in its definition of "owner" both lessees and occupiers of property. In interpreting the meaning of "property" defined by Wis. Stat. § 895.52(1)(f), we reached a similar conclusion: "[I]t is abundantly clear from the language of the statute and the

4

statement of legislative intent that the purpose of the statute is broader, and recreational immunity is not in fact limited only to landowners." Peterson v. Midwest Sec. Ins. Co., 2001 WI 131, ¶22, 248 Wis. 2d 567, 636 N.W.2d 727.

¶137 This broad legislative purpose, evidenced by the legislative policy statement read in conjunction with the statutory text refutes the majority's claim that "[i]mmunizing Sundog would have no effect on whether the public had access to private land, because Sundog is not responsible for opening the land to the public." See majority op., ¶37.

¶138 Here, Sundog provided the recreational ballooning activity free of cost to members of the public who attended the charity event. Depriving Sundog of immunity because Green Valley and the Conservationists, rather than Sundog, "opened" the land to the public, creates a distinction between Sundog on the one hand, and Green Valley and the Conservationists on the other, that is not only unsupported by the broad legislative purpose of the recreational immunity statute but wholly absent from the statutory definition of the term "owner." Furthermore, the creation of this unsupported distinction ignores the fact that the Conservationists allowed Green Valley to hold an event that included a recreational ballooning activity provided by Sundog. Sundog's participation in the charity event undoubtedly encouraged the public to attend the event and, in some instances, take part in the recreational ballooning activity. Declining to recognize Sundog's statutory immunity will discourage organizations such as Sundog from donating

5

recreational activities at charity events for fear of incurring liability, which, in turn, will reduce sponsorship of such events by organizations because they will have less recreational options——if any at all——to draw attendance. Ultimately, public access to private land will be reduced. This runs counter to the legislative purpose of the recreational immunity statute.

¶139 As further support for its decision to treat Sundog differently than Green Valley and the Conservationists, the majority indicates that prior case law has not granted immunity to a "third-party" organization such as Sundog. See majority op., ¶33. Simply because the appellate courts apparently have not previously been presented with a similar fact pattern does not eliminate immunity created by the statute. Sundog satisfies the requirements of the statute and therefore is entitled to the immunity it provides.

¶140 Further, the majority does not explain how its conclusion——that an organization such as Sundog that did not open land to the public cannot "occupy" the property——accounts for the plain, ordinary, and accepted meaning of the term "occupies." See majority op., ¶41. Although the majority opinion references the "requiring a degree of permanence, as opposed to mere use" definition of "occupies" utilized by the court of appeals in Doane v. Helenville Mut. Ins. Co., 216 Wis. 2d 345, 354, 575 N.W.2d 734 (Ct. App. 1998), majority op., ¶34, it fails to apply the Doane definition to the facts of this case and fails to address the fact that the court of appeals has used differing definitions of "occupies," as explained below, when

6

determining whether an individual or group meets the definition of "owner" in Wis. Stat. § 895.52(1)(d)1.

¶141 On several occasions, the court of appeals has addressed the meaning of "occupies" in the definition of "owner" under Wis. Stat. § 895.52(1)(d)1. and concluded that "occupies" requires actual use of the property. In <u>Hall v. Turtle Lake Lions Club</u>, 146 Wis. 2d 486, 490-91, 431 N.W.2d 696 (Ct. App. 1988), the court of appeals adopted a definition of "occupies" from a case decided by the Seventh Circuit Court of Appeals:

> [O]ccupant include[s] persons who, while not owners or tenants, have the actual use of land . . . . While "occupant" includes [an] owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to [occupies], the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner.

<u>Id.</u> at 491 (citing <u>Smith v. Sno Eagles Snowmobile Club, Inc.</u>, 823 F.2d 1193, 1197 (7th Cir. 1987))(quoting <u>Smith v. Sno Eagles Snowmobile Club, Inc.</u>, 625 F. Supp. 1579, 1582 (E.D. Wis. 1986)).[6] Subsequent cases have cited <u>Hall</u> and relied on its definition of "occupies property." <u>See</u> <u>Leu v. Prince Cty. Snowmobile Trails Ass'n, Inc.</u>, 2005 WI App 81, ¶¶11-13, 280 Wis. 2d 765, 695 N.W.2d 889; <u>Mooney v. Royal Ins. Co. of Am.</u>, 164 Wis. 2d 516, 521-22, 476 N.W.2d 287 (Ct. App. 1991); <u>Lee v. Elk</u>

---

[6] Although <u>Smith v. Sno Eagles Snowmobile Club, Inc.</u>, 823 F.2d 1193 (7th Cir. 1987), applied Wis. Stat. § 29.68, the precursor to Wis. Stat. § 895.52, both statutes grant recreational immunity to owners, lessees, and occupants. <u>Compare</u> Wis. Stat. § 29.68(1)(1981-82) <u>with</u> Wis. Stat. § 895.52(1)(d)1. and (2) (2013-14).

Rod & Gun Club, Inc., 164 Wis. 2d 103, 107, 473 N.W.2d 581 (Ct. App. 1991).

¶142 However, in Doane, the court of appeals determined that "occupies property" within the definition of "owner" under Wis. Stat. § 895.52(1)(d)1. requires some degree of permanence in addition to actual use of the property. Doane, 216 Wis. 2d at 351. The court of appeals recently applied the some degree of permanence definition of "occupies" from Doane in WEA Property & Cas. Ins. Co., 2013 WI App 139, ¶21, 352 Wis. 2d 73, 841 N.W.2d 290.

¶143 The majority, however, fails to apply the some degree of permanence definition of Doane to the facts of this case. Instead, it compares this case to Doane by focusing on the purpose underlying the recreational immunity statute——to open up land for recreation. Majority op., ¶35. Doane involved the owner of an ice shanty on a lake already open for public recreational purposes, who was not present at the invitation of the titled owner or lessee but who was simply using public waters as any member of the public could. See Doane, 216 Wis. 2d at 348, 353-54. An entirely different situation is presented here, where Sundog, the owner of a hot air balloon, was invited to occupy land for purposes of attracting members of the public to a charity event by offering the recreational activity of ballooning. The majority likens Sundog to the owner of the ice shanty because the Conservationists' property, like the lake in Doane, was already open for public recreational purposes; therefore, the majority reasons, recognizing immunity "'would

8

not further the policy which underlies the statute, i.e., of opening as much property as possible for recreational use . . . .'" Majority op., ¶35 (citing Doane, 216 Wis. 2d at 355). The majority's analogy fails because in Hall, 146 Wis. 2d at 487, the Turtle Lake Lions Club was immunized from liability for an injury occurring on the grounds of a public park and in Lee, 164 Wis. 2d at 107, the Elk Rod & Gun Club was considered a "landowner" under the recreational immunity statute as an occupant of a city park. The recreational immunity statute simply does not restrict immunity to occupiers of land that is not already open to the public.

¶144 The definition of "occupies" adopted in Hall comports with the plain, ordinary, and accepted meaning of the word as well as the legislative purpose of the recreational immunity statute. There is no temporal requirement embedded in the definition of occupy. The broad definition of "owner," which expressly encompasses a person that "occupies" property, is not limited to those who "host" or "organize" an event on the land. The recreational immunity statute immunizes a person that "owns, leases or occupies property"; the statute does not restrict immunity to only those occupiers who are event "hosts" or "organizers," a limitation the majority invents in this case. In an apparent attempt to further narrow the scope of recreational immunity beyond the words of the statute, the majority reads into the statute language that simply is not present. Whether recreational immunity should be further

9

limited is a policy judgment for the legislature and not this court to make.

¶145 Furthermore, I am not persuaded by the majority's conclusion that granting recreational immunity to Sundog would result in the limitless application of Wis. Stat. § 895.52(2). See majority op., ¶¶38-40. A plain meaning interpretation of "occupies property," requires actual use of the land. For example, in Mooney, 164 Wis. 2d at 522-23, the court of appeals held that a snowmobile club that had left the property following the conclusion of an event did not meet the definition of an occupier and could not receive recreational immunity. The same would be true of a hot air balloon manufacturer because the manufacturer is not located on the property at the event using the land, and therefore is not an "occupier." It should go without saying that the recreational immunity statute does not extend to the manufacturer of Sundog's balloon yet the majority uses this example to create an unnecessary limiting principle by stirring unfounded fears that otherwise "there will be no stopping point to recreational immunity" despite statutory language that plainly restricts immunity to those who own, lease or occupy property. See majority op., ¶39. Of course, the manufacturer of Sundog's balloon fits none of these categories. The legislature created a stopping point. It is not this court's role to second-guess the legislature's policy judgments by moving the mark.

¶146 Finally, the majority relies on Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), to declare a

10

new limiting principle for recreational immunity. Majority op., ¶¶38-39. In Linville, the court declined to extend immunity to city paramedics providing services for injuries sustained during a recreational activity, noting that such services could take place days or weeks after the event and away from the site of the recreational activity. Linville, 184 Wis. 2d at 711, 720. Specifically, relying on Linville, the majority asserts that Sundog has "no connection to the land" and therefore should not qualify for recreational immunity. Majority op., ¶39. The use of Linville and this particular limiting principle is perplexing in two respects. First, the majority's reliance on Linville implicitly addresses the Roberts's alternative argument——that an injury must arise from a condition associated with the land—— despite the majority opinion's pronouncement that it does not decide this issue. See majority op., ¶4 n.4. Second, not only was Sundog present on the land during the charity event, but its hot air balloon was literally connected to the land by ropes that tethered the hot air balloon to two trees (and a truck) on the property. Unlike the paramedics in Linville, Sundog was the entity actually providing the recreational activity, notably one that is specifically mentioned as a "recreational activity" in the recreational immunity statute. See 895.52(1)(g).

¶147 I would affirm the court of appeals and hold that Sundog is entitled to recreational immunity under Wis. Stat. § 895.52.

¶148 For the foregoing reasons, I respectfully dissent.

11

¶149 I am authorized to state that Justice DAVID T. PROSSER joins this dissent except for footnote 4.